MERRITT, Chief Judge.
This is a wrongful death action brought under 42 U.S.C. § 1983 which has now been to this court three times and once to the Supreme Court. It involves the fatal shooting by a Memphis police officer of a fifteen-year-old fleeing felony suspect under circumstances which this court and the Supreme Court have held violated the Fourth Amendment right to be free from unreasonable seizure. Garner v. Memphis Police Dept., 710 F.2d 240 (6th Cir.1983); Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The case was back before the district court on remand from the Supreme Court for consideration of whether the shooting occurred pursuant to municipal “policy” under Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On remand, the district court held that the Supreme Court’s ruling in this case should not be applied retroactively to this case. Accordingly, the court entered summary judgment in favor of the defendants, and denied plaintiffs motion for partial summary judgment on the issue of liability. Plaintiff appeals both rulings. We reverse the district court’s grant of summary judgment in favor of the defendants and its denial of plaintiffs partial summary judgment motion. We also remand for entry of an order granting plaintiffs motion for partial summary judgment and for a determination of damages.
I.
On the night of October 3, 1974, a fifteen-year-old, unarmed boy broke a window and entered an unoccupied residence in suburban Memphis to steal money and property. Two police officers, Elton Hymon and Leslie Wright, were called to the scene by a neighbor. The officers intercepted the youth as he ran from the back of the house to a six foot cyclone fence in the back yard. After shining a flashlight on the boy as he crouched by the fence, Officer Hymon identified himself as a policeman and yelled “Halt.” He could see that the fleeing felon was a youth and was apparently unarmed. As the boy jumped to get over the fence, the officer fired at the upper part of the body, as he was trained to do by his superiors at the Memphis Police Department. He shot because he believed the boy would elude capture in the dark once he was over the fence. The youth died of the gunshot wound. On his person was ten dollars worth of money and jewelry he had taken from the house.
Officer Hymon had been taught that it was proper under Tennessee law to kill a fleeing felon rather than run the risk of allowing him to escape. A Tennessee statute provided that “[i]f, after notice of the intention to arrest the defendant, he either flee or forci *361 bly resist, the officer may use all the necessary means to effect the arrest.” Tenn.Code Ann. § 40-7-108.[1] The Memphis Police Department’s policy on use of deadly force was slightly more restrictive than the statute, but still allowed the use of deadly force in cases of burglary. Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698. The Police Department’s policy was promulgated by the Department’s Director, with the consultation and approval of the Mayor.
Decedent’s father filed this action under 42 U.S.C. § 1983 to recover damages for wrongful death caused by claimed constitutional violations of the Fourth, Eighth and Fourteenth Amendments. The complaint named as defendants Officer Hymon, the Police Department, its Director, the City of Memphis, and the Mayor of Memphis. After a three day bench trial, the district court dismissed the claims against the Director and the May- or for lack of evidence. It also dismissed the claims against Officer Hymon, holding that his actions were authorized by the Tennessee statute, which the court held was constitutional. In accordance with Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the district court also dismissed the claims against the City and the Police Department, holding that 'a city is not a “person” subject to suit under § 1983.
On appeal, this court affirmed the district court’s dismissal of the individual defendants, holding that they were protected by the doctrine of qualified immunity because they acted in good faith reliance on Tenn.Code Ann. § 40-7-108. Garner v. Memphis Police Dept., 600 F.2d 52 (6th Cir.1979) (Garner I). We also remanded for reconsideration of the possible liability of the City and Police Department in light of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which had come down after the district court’s decision.
Because Monell held that a city may be liable in damages under § 1983 for constitutional deprivations that result from a “policy or custom” followed by the city, 436 U.S. at 694, 700-01, 98 S.Ct. at 2037, 2041, we instructed the district court to consider the following: (1) whether a municipality enjoys qualified immunity; (2) whether the use of deadly force was unconstitutional under the circumstances; (3) whether the use of hollow point bullets was unconstitutional; and (4) whether any unconstitutional' municipal conduct flowed from a “policy or custom” under Monell. Garner I, 600 F.2d at 54-55.
On remand, the district court ordered memoranda and oral argument on the issue of whether the trial should be reopened. Upon consideration of the parties’ submissions, the court denied further hearings and dismissed the case on the merits, holding that the constitutional claims had already been fully adjudicated. Because there had been no constitutional violation, the holding of Monell that cities could be liable for violations occurring pursuant to a policy or custom of the city did not require a different result. Plaintiffs motion for reconsideration was granted and he was allowed to submit further briefs and make an offer of proof. The court considered the offer of proof and once again ruled against plaintiffs. It held that the wisdom of a statute permitting the use of deadly force against all fleeing felons was a matter of policy for the legislature rather than the judiciary, and that the Tennessee statute was not unconstitutional on its face, nor as applied by the police officer in this case.
Addressing the question of the City’s good faith immunity, the district court held that Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), prevented the City from claiming immunity from liability based on the good faith of its agent. Nevertheless, it found that it was still an open question whether the City might claim immunity if the City itself was relying in good faith on the Tennessee law as interpreted by the federal and state courts. The district court did not believe it necessary to address the constitutionality of the use of hollow point bullets, because it found that there was no causal connection between the use of hollow point bullets and Garner’s death.
We reversed and remanded, holding that Memphis’ deadly force policy, as applied to *362 this case, violated the Fourth Amendment right to be free from unreasonable seizures. Garner v. Memphis Police Dept., 710 F.2d 240, 246 (6th Cir.1983) (Gamer II). We held that police officers cannot resort to deadly force to apprehend fleeing felons unless they have “probable cause — an objective, reasonable basis in fact to believe that the felon is dangerous or has committed a violent crime.” Id. The Supreme Court granted certiorari and affirmed. The Court held that the Tennessee statute “is invalid insofar as it purported to give Hymon the authority to act as he did.” Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707. Eight years ago the case was remanded to the district court for resolution of the Monell issue, and there it languished.
On remand, plaintiff filed a motion for partial summary judgment on the issue of. the liability of the City and Police Department under Monell. Plaintiff attached two exhibits to the motion. The first was a copy of General Order No. 5-74, the Police Department policy statement authorizing use of deadly force in certain circumstances. The second exhibit was deposition testimony by the Mayor of Memphis, in which the Mayor states that he considered whether all types of burglary should be included on the list of felonies justifying use of deadly force, and concluded that they should. Defendants responded to the motion by asserting various legal arguments; they did not submit any additional evidence.
Last year, the district court finally denied plaintiffs motion for partial summary judgment and granted summary judgment in favor of the defendants, holding that, under Carter v. City of Chattanooga, 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989), the Supreme Court's ruling in Tennessee v. Gamer should not be applied retroactively to the parties. The court then dismissed the case. Plaintiff filed this timely appeal, challenging both the grant of summary judgment in favor of the defendants and the denial of plaintiffs motion for summary judgment.
II.
We first consider the district court’s holding that defendants are not liable because of their good faith reliance on previous judicial determinations that their fleeing felon policy was constitutional. The court based its decision upon Carter v. City of Chattanooga, Tenn., 850 F.2d 1119 (6th Cir.1988) (en banc), cert. denied, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989). In Carter, a case factually similar to this one, this court held that “Tennessee v. Garner should not have been retroactively applied to the City of Chattanooga.... [The City] was not at the time following a clearly established unlawful or unconstitutional policy.” Id. at 1137. Carter’s retroactivity analysis is clearly not relevant to the instant case. In Tennessee v. Gamer, the Supreme Court applied its ruling retroactively to these parties. Neither this court nor the district court is free to reexamine the Supreme Court’s ruling and reach a different conclusion. Moreover, this case is itself the case in which the Supreme Court declared the fleeing felon rule, and it is hornbook law that the rule should be applied retroactively in the very case that lays down a rule. Otherwise parties would have no incentive to argue for such a rule because they would get no benefit from winning the case.
Although the Supreme Court did not explicitly state that its holding was to be applied retroactively to the parties before the Court, the Court’s intent is unmistakable:
We wish to make clear what our holding means in the context of this case.... The possible liability of the remaining defendants — the Police Department and the city of Memphis — hinges on Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and is left for remand. We hold that the statute is invalid insofar as it purported to give Hymon the authority to act as he did. As for the policy of the Police Department, the absence of any discussion of this issue by the courts below, and the uncertain state of the record, preclude any consideration of its validity.
Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707 (emphasis added).
*363 The conclusion that the Supreme Court intended its holding to be applied to the parties before the Court is compelled by the reasoning of James B. Beam Distilling Co. v. Georgia, — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In Beam, the Court considered whether its holding in Bacchus Imports v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), should be retroactively applied in other cases pending when Bacchus was decided. As in Tennessee v. Garner, the Supreme Court in Bacchus had remanded the case to the district court for further proceedings without explicitly stating that the rule established in the case was to be applied retroactively to the parties before the Court. The Beam court held unanimously that Bacchus’ silence on the retroactivity issue indicated that the Court intended to follow the usual practice of applying its decision to the parties before it. See Beam, — U.S. at —, 111 S.Ct. at 2445 (plurality opinion) (“Because the Bacchus opinion did not reserve the question whether its holding should be applied to the parties before it ... it is properly understood to have followed the normal rule of retroactive application in civil cases.”); see also id. at-, 111 S.Ct. at 2451 (O’Connor, J., dissenting) (“I agree that the Court in Bacchus applied its rule retroactively to the parties before it. The Bacchus opinion is silent on the retroactivity question. Given that the usual course in cases before this Court is to apply the rule announced to the parties in the case, the most reasonable reading of silence is that the Court followed its customary practice.”). The same reasoning applies to Tennessee v. Garner.
The Supreme Court intended its ruling in this case to be applied retroactively to the parties. The defendants do not, therefore, have a non-retroactivity defense based upon their good faith reliance upon previous judicial decisions. Because the district court’s grant of summary judgment in favor of the defendants was based solely upon a retroac-tivity analysis, the court’s ruling must be reversed.
III.
We now consider the district court’s denial of plaintiffs motion for partial summary judgment on the question of liability. A denial of summary judgment is an interlocutory order, not ordinarily subject to appeal. Nazay v. Miller, 949 F.2d 1323, 1328 (3rd Cir.1991). Where, however, an appeal from a denial of summary judgment is presented in tandem with an appeal from a grant of summary judgment, this court has jurisdiction to review the propriety of the district court’s denial of summary judgment. Id.
Plaintiffs motion for partial summary judgment asserts that there remain no genuine issues of material fact, and that the law clearly establishes defendants’ liability. Defendants’ response to the summary judgment motion raises only legal arguments and does not assert that there remain genuine issues of material fact. Where a motion for summary judgment is denied on the grounds that there exists a genuine issue of material fact, review of this ruling is under the abuse of discretion standard. Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Where, however, a denial of summary judgment is based solely upon legal grounds, review is de novo. See Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989), cert. denied, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). Because the district court denied plaintiffs partial summary judgment motion solely upon legal grounds, we review this denial de novo.
As the Supreme Court stated, defendants’ liability hinges on Monell. Tennessee v. Garner, 471 U.S. at 22, 105 S.Ct. at 1707. In Monell, the Supreme Court overruled Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities are “persons” subject to suit under § 1983. Monell, 436 U.S. at 700-01, 98 S.Ct. at 2041. Municipalities are not, however, liable for every misdeed of their employees and agents. “Instead, it is when execution of a government’s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.” Id. at 694, 98 S.Ct. at 2037-38. *364 This circuit has stated that to satisfy the Monell requirements a plaintiff must “identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.” Coogan v. City of Wixom, 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir.1984) (en banc), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). Plaintiff has met this standard.
First, it is clear that the defendants had a policy authorizing use of deadly force when necessary to apprehend a fleeing burglary suspect. Memphis Police Department General Order 5-74(3)(b)(3) provides:
(3) Other Felonies Where Deadly Force is Authorized.
After all reasonable means of preventing or apprehending a suspect have been exhausted, DEADLY FORCE is authorized in the following crimes:
(a) Kidnapping
(b) Murder in the 1st or 2nd degree
(c) Manslaughter
(d) Arson (Including the use of firebombs)
(e) Rape
(f) Assault and battery with intent to carnally know a child under 12 years of age
(g) Assault and battery with intent to commit rape
(h) Burglary in the 1st, 2nd, or 3rd degree
(i) Assault to commit murder in the 1st or 2nd degree
(j) Assault to commit voluntary manslaughter
(k) Armed and simple robbery
App. 81 (emphasis added). This order was signed by the Director of the Memphis police. The Mayor of Memphis testified in a deposition that he was also involved in the decision to include all types of burglary on the list of felonies justifying use of deadly force: “One of the arguments was to eliminate burglary and this type thing, some kinds of burglary, which I did not do. I did not think it should be done.” App. 103. Defendants do not contest that General Order 5-74 represented the official policy of the Memphis Police Department and the City of Memphis.
Defendants argue instead that it was not a policy under the Monell line of eases because it did not represent a “deliberate choice to follow a course of action ... from among various alternatives.” Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). In devising their fleeing felon policy, defendants relied on a Tennessee statute, Tenn.Code Ann. § 40-7-108:
Resistance to Officer — If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest.
Defendants argue that they had no choice but to follow this statute.
This argument is without merit. The defendants were bound to follow the statute in that they could not adopt a more permissive deadly force policy by, for example, eliminating the requirement that an officer give notice of an intention to arrest before employing deadly force. The statute did not, however, prevent the defendants from adopting a more restrictive deadly force policy. In fact, defendants did exercise their freedom to choose a more restrictive policy, refusing to authorize use of deadly force to apprehend certain non-violent felony suspects such as embezzlers and frauds. App. 93; see also Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698 (noting that Memphis’ policy was slightly more restrictive than the Tennessee statute). Defendants’ decision to authorize use of deadly force to apprehend nondangerous fleeing burglary suspects was, therefore, a deliberate choice from among various alternatives under Pembaur.
Having identified the policy and connected it to the defendants, plaintiff need only show that the policy caused the injury complained of, the death of plaintiffs son. See Coogan, 820 F.2d at 176. Defendants did not in their briefs or at oral argument contest the causation issue. The Police Department taught Officer Hymon that it was proper to shoot a fleeing burglary suspect in order to prevent escape. That was their *365 policy. Garner I, 600 F.2d at 63. As the Supreme Court stated in this case, “Hymon was acting under the authority of a Tennessee statute and pursuant to Police Department policy.” Tennessee v. Garner, 471 U.S. at 4, 105 S.Ct. at 1698. Thus, there is a sufficient link between defendants’ deadly force policy and Hymon’s actions to establish that the policy was the “moving force of the constitutional violation.” See Monell, 436 U.S. at 694, 98 S.Ct. at 2037. Plaintiff has satisfied all of the Monell requirements.
Defendants raise two additional objections to plaintiffs motion for partial summary judgment. First, they argue that the Police Department and the City should be dismissed from the case because the district court dismissed Officer Hymon, finding that he had not committed a constitutional violation. The district court found that Officer Hymon “acted within his duties as a reasonable police officer without malice, predisposition or racial animus and within the guidelines afforded him as a Memphis policeman.” Defendants rely upon City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), in which the Court upheld the district court’s dismissal of the City of Los Angeles and its Police Commission, holding that “[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have atdhorized the use of constitutionally excessive force is quite beside the point.” Id. at 799, 106 S.Ct. at 1573.
Defendants’ reliance on Heller is misplaced. The point in Heller was that the city could not be held responsible for a constitutional violation which could have occurred but did not. In the instant case there is no doubt that a constitutional violation occurred. “A police officer may not seize an unarmed, nondangerous suspect by shooting him dead. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.” Tennessee v. Garner, 471 U.S. at 11, 105 S.Ct. at 1701. The district court’s holding to the contrary was overturned by this court, and the Supreme Court affirmed. Garner II, 710 F.2d 240; Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694.
This court upheld Officer Hymon’s dismissal from the case not because he committed no constitutional violation, but because he was protected by the doctrine of qualified immunity. Tennessee v. Garner, 471 U.S. at 5, 105 S.Ct. at 1698; Garner II, 710 F.2d at 242; Garner I, 600 F.2d at 54. Under the law of this circuit, a municipality may not escape liability for a § 1983 violation merely because the officer who committed the violation is entitled to qualified immunity. Doe v. Sullivan County, Tenn., 956 F.2d 545, 554 (6th Cir.), cert. denied, — U.S. —, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992).
Defendants’ final argument is that a municipality may be held liable under § 1983 only if its policy reflects “deliberate indifference” to constitutional rights under City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1207, 103 L.Ed.2d 412 (1989). They argue that they were not “indifferent” to the constitutional rights of fleeing felony suspects, but developed their policy in the good faith belief that it was within constitutional limits. Harris addressed the question under what circumstances a municipality is liable “if a concededly valid policy is unconstitutionally applied by a municipal employee” because of the municipality’s failure to adequately train that employee. Harris, 489 U.S. at 387, 109 S.Ct. at 1204.
Harris is a “failure to train” case, and is not on point. The “deliberate indifference” test is employed to determine when “inadequate training can justifiably be said to represent ‘city policy.’ ” Id. at 390, 109 S.Ct. at 1205. In the instant ease there is no question that General Order 5-74 can justifiably be said to represent City policy. The distinction between the type of case to which Harris is properly applied and the case at bar is apparent from the follow passage from Harris, in which the Court illustrates how the “deliberate indifference” test would be applied in a variation on the Tennessee v. Garner fact pattern:
For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. *366 The city has armed its officers with firearms, in part to allow them to accdmplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see Tennessee v. Garner, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be “so obvious,” that failure to do so could properly be characterized as “deliberate indifference” to constitutional rights.
Id. 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10. This case is not a variation on Tennessee v. Gamer, it is Tennessee v. Garner. There is no need for an elaborate analysis of whether the defendants’ failure to act was the result of such “deliberate indifference” that it was essentially a matter of policy. Far from failing to train their officers in the constitutional limitations on the use of deadly force, defendants trained their officers to exceed these limitations. That the defendants did not intend to violate the Constitution is no defense. In Harris, “deliberate indifference” refers to indifference to injuries likely to result from a failure to act, not indifference to whether such injuries constitute deprivation of a constitutional right.
Having decided that plaintiffs motion for partial summary judgment should have been granted, the only remaining question is the appropriate disposition of the case. Under 28 U.S.C. § 2106, this court has jurisdiction to “remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.” In a case such as this, where both sides- have had an opportunity to present evidence, the facts are uneontroverted, and the proper disposition is clear, this court may direct the entry of summary judgment. See Nazay, 949 F.2d at 1328; Weber v. Dell, 804 F.2d 796, 798 n. 2 (2d Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); Morgan Guaranty Trust Co. v. Martin, 466 F.2d 593, 600 (7th Cir.1972).
' Accordingly, we REVERSE the district court’s grant of summary judgment in favor of the defendants and its denial of plaintiffs partial summary judgment motion. We also REMAND with directions that the district court enter an order of partial summary judgment in favor of the plaintiff on the issue of liability. The only issue remaining for the district court to resolve upon remand is the appropriate measure of damages.

. At the time of the shooting, this statement was codified at Tenn.Code Ann. § 40-808.