**MINNESOTA COUNCIL OF DOG CLUBS, et al., Appellants,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

No. C4–95–1284.

Court of Appeals of Minnesota.

Dec. 12, 1995.

Review Denied Jan. 25, 1996.

Marshall H. Tanick, Teresa J. Ayling, Mansfield & Tanick, P.A., Minneapolis, for Minnesota Council of Dog Clubs.

Surell Brady, Minneapolis City Attorney, Timothy S. Skarda, Assistant City Attorney, Minneapolis, for City of Minneapolis.

Considered and decided by CRIPPEN, P.J., and RANDALL and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.[*]

This is an appeal from a judgment denying appellants' request for attorney fees. The underlying lawsuit, brought by appellants Minnesota Council of Dog Clubs and American Dog Owners Association, Inc., challenged

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the constitutionality of various portions of the Minnesota Cruelty to Animals Act, Minn. Stat. §§ 343.22, 343.235, 343.29. The district court, ruling in favor of appellants, held that the challenged sections were in violation of the Fourteenth Amendment of the United States Constitution and the concurrent provision of the Minnesota Constitution, Article I, Section 7, and enjoined enforcement of the challenged portions within the City of Minneapolis. Appellants then moved, under 42 U.S.C. § 1988, for an award of attorney fees and costs in the amount of $64,727.65. The district court denied the award. This appeal was subsequently brought pursuant to rule 103.03(a) of the Minnesota Rules of Civil Appellate Procedure.

## FACTS

Appellants, two nonprofit state and national organizations of dog owners, filed suit in October 1993, challenging the federal and state constitutionality of several provisions of the Minnesota Cruelty to Animals Act, Minn. Stat. §§ 343.22, 343.235, 343.29. Appellants sought declaratory relief pursuant to Minn. Stat. §§ 555.01–.16. Among its allegations, appellants' complaint referenced 42 U.S.C. § 1983: "Prosecution and enforcement of the Act are undertaken under color of state law within the meaning of the Civil Rights Act of 1964, 42 U.S.C. § 1983."

The district court initially dismissed the case on the ground that appellants lacked standing to pursue claims on behalf of their members. This court reversed in an unpublished opinion, *Minnesota Council of Dog Clubs v. City of Minneapolis*, No. C3–94–939, 1994 WL 593912 (Minn.App. Nov. 1, 1994), and remanded the case for further proceedings.

Appellants and respondent then brought cross-motions for summary judgment. The district court granted appellants' motion, holding all of the challenged provisions unconstitutional and enjoining further enforcement of the law in the City of Minneapolis. Subsequently, appellants brought a motion under 42 U.S.C. § 1988 for reasonable attorney fees and costs of $64,727.65. Attorney fees were calculated at $55,300.50, based upon a lodestar of 331 hours multiplied by

applicable fee rates, ranging from $50 to $165, out-of-pocket costs of $4,427.15, and a requested "enhancement" of $5,000. Respondent opposed the motion on grounds that it should not be liable for a fee award under section 1988. The district court denied the fee request by an order dated May 25, 1995.

The district court cited three reasons for its refusal to grant attorney fees: (1) respondent's conduct had nothing to do with the constitutional infirmities alleged; (2) respondent had not violated appellants' due process rights; and (3) appellants' lawsuit only challenged "anticipatory enforcement" of the challenged provisions. Appellants seek reversal of the district court's decision.

## ISSUE

Did the district court abuse its discretion by denying attorney fees under 42 U.S.C. § 1988 to appellants who successfully challenged the constitutionality of Minn.Stat. §§ 343.22, 343.235, 343.29 in an action against a municipality for enforcement of state law?

## ANALYSIS

### 1. Standard of Review

■ The standard of review for an appellate court examining an award of attorney fees and costs is whether the district court abused its discretion. *Radloff v. First Am. Nat'l Bank*, 470 N.W.2d 154, 156 (Minn.App. 1991), *review denied* (Minn. July 24, 1991). The Minnesota Supreme Court noted, however:

Although section 1988 leaves an award of attorney fees to the discretion of the court, the United States Supreme Court requires an award of attorney fees to a prevailing party unless special circumstances would render an award unjust.

*Welsh v. City of Orono*, 355 N.W.2d 117, 124 (Minn.1984), (citing *Newman v. Piggie Park Enter.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

### 2. Discussion

Appellants' claim for attorney fees was brought pursuant to 42 U.S.C. § 1988 (1988), *amended by* 42 U.S.C. § 1988(b) (Supp. III 1991), which provides:

In any action or proceeding to enforce a provision of section[ ] * * * 1983 * * * of this title * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 1983, in turn, allows a cause of action for

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988).

■ It is undisputed that appellants prevailed in the action underlying this appeal. The threshold question that we must address, therefore, is whether appellants properly asserted a claim under 42 U.S.C. § 1983. The United States Supreme Court requires two allegations to state a cause of action under section 1983. Plaintiffs must allege (1) that they were deprived of a federal right and (2) that the person so depriving acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

■ Count I of appellants' complaint states: "Prosecution and enforcement of the Act are undertaken under color of state law within the meaning of the Civil Rights Act of 1964, 42 U.S.C. § 1983." This contention is re-alleged in the lawsuit's ensuing counts. Appellants' complaint also specifically states that the challenged portions of the act deprived dog owners of due process and the right to a fair trial in violation of the United States Constitution and the Minnesota Constitution. Appellants' complaint, therefore,

explicitly alleges a section 1983 cause of action and identifies a deprivation of federal rights under color of state law.

The Minnesota Supreme Court applied the *Gomez* two-part test for asserting a section 1983 claim in *L.K. v. Gregg,* 425 N.W.2d 813, 818 (Minn.1988). As in the case at bar, *Gregg* involved a request for attorney fees sought pursuant to section 1988. In *Gregg,* plaintiffs who had brought an action for declaratory and injunctive relief were allowed to recover attorney fees pursuant to section 1988 based on a section 1983 claim. The court never questioned whether plaintiffs were barred from seeking recovery of attorney fees under section 1988 because they had asserted an action for declaratory judgment. The *Gregg* case undermines respondent's argument that appellants are not eligible for attorney fees under section 1988 simply because they asserted claims, pursuant to the Uniform Declaratory Judgment Act, Minn. Stat. §§ 555.01–.16, to which the section 1988 fees being sought are inapplicable. We conclude that appellants properly asserted a section 1983 claim.

Our next consideration is whether municipal liability may be imposed under section 1983 in this case. The United States Supreme Court first extended section 1983 liability to municipalities in *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where * * * the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

The Court ruled that a local government could only be held liable if, "under color of some official policy," it caused violation of another's constitutional rights:

[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 692, 694, 98 S.Ct. at 2036, 2037–38.

■ The establishment of a policy or custom divergent from state law is not a prerequisite for imposition of section 1983 liability upon a municipality. A municipality, however, must make a "deliberate choice to follow a course of action * * * from among various alternatives" to sustain section 1983 liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986), *quoted in Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993), *cert denied,* —— U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). In this case, the respondent municipality was limited to following now invalidated state law to achieve certain enforcement objectives.

This case, therefore, is distinguishable from *Garner,* a Sixth Circuit case where the court rejected a police department's claim that it could not be held liable for a violation of the Civil Rights Act merely because the department took action consistent with state law. 8 F.3d at 364. The *Garner* court found liability where a police department adopted a more restrictive policy than state law required regarding the use of force to effect an arrest, even though the police department's policy was accordant with state law. *Id.* The court determined that the municipality's enforcement of the state law at issue was a deliberate choice among a variety of alternatives. *Id.* Unlike *Garner,* the respondent in this case was not afforded similar discretion.

This case is also distinguishable from a Fifth Circuit case which held that a sheriff acting pursuant to a state statute was acting under color of state law for purposes of a federal civil rights action regardless of whether state law provided him any discretion in carrying out his duties. *Jackson v. Galan,* 868 F.2d 165, 167–68 (5th Cir.1989). The court in that case awarded attorney fees against the sheriff, rejecting the argument that he should not be liable. *Id.; see also Johnson v. Mississippi,* 606 F.2d 635, 637 (5th Cir.1979) (holding local officials liable for attorney fees under section 1988 for enforc-

ing state statute). The holdings in *Jackson* and *Johnson,* unlike this case, however, address individual rather than municipal liability.

■ It is our conclusion that respondent is not liable for attorney fees in this case for merely following state law. *See Bockes v. Fields,* 999 F.2d 788, 791 (4th Cir.1993) ("Such bounded, state-conferred discretion is not the 'policymaking' authority for which a county may be held responsible under § 1983."), *cert. denied,* —— U.S. ——, 114 S.Ct. 922, 127 L.Ed.2d 216 (1994).

It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. *Surplus Store & Exchange v. City of Delphi,* 928 F.2d 788, 791 (7th Cir.1991). Because we find that respondent is not subject to liability, we need not reach any additional considerations.

Finally, it is important to note that if municipalities were to be held liable every time they enforced a state law, the consequences would be horrendous. Any municipality could be financially devastated by a number of such actions. Furthermore, in order to protect itself, a municipality would have to examine every statute passed by the legislature and then decide whether to enforce it. This would produce a spotty and chaotic enforcement policy throughout the state.

### DECISION

We affirm the district court's denial of attorney fees and costs sought pursuant to 42 U.S.C. § 1988 to appellants who successfully challenged several provisions of the Cruelty to Animals Act, Minn.Stat. §§ 343.22, 343.235, 343.29, in an action brought under 42 U.S.C. § 1983 against a municipality for enforcing state law.

**Affirmed.**

RANDALL, Judge (concurring specially).

As the majority correctly sets out, the district court, although giving appellants the decision on the merits, refused appellants'

request to impose substantial attorney fees on respondent, the City of Minneapolis. The district court cited its three reasons: (1) respondent's conduct had nothing to do with the constitutional infirmities alleged; (2) respondent had not violated appellants' due process rights; and (3) appellants' lawsuit only challenged "anticipatory enforcement" of the challenged provisions. The district court got it exactly right.

Appellants' claim for attorney fees has brought full circle the original intent behind section 1983 and turned it on its head.

Even a cursory examination of relevant cases shows that its intent was to punish people, including governmental entities, who, under a claimed "color of law" wilfully tried to end-run or violate a citizen's civil rights. It was not meant to financially impair or bankrupt communities and municipalities that are doing nothing other than following mandates of the state legislature.

That from time to time, state and federal courts declare a state or federal law, passed, with the high but rebuttable cloak of constitutionality, unconstitutional, surprises no one. Courts do not kick out legislative actions routinely; but they kick out legislative enactments enough that to declare a law unconstitutional, although not common, is not rare. If every time the courts declared a law unconstitutional, every municipality, every governmental entity in the state with law enforcement powers that had attempted to enforce what they thought to be good law could be sued, the end result is clear. Legislatures would pass no laws; if they did, municipalities would not enforce them.

The facts in *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), are instructive. The city of Independence, through unanimous resolution of its council, released to the public an allegedly false statement impugning the police chief's honesty and integrity. *Owen*, 445 U.S. at 627–28, 100 S.Ct. at 1404 The chief was discharged the next day, and the council's accusations received extensive coverage in the press. *Id.* The U.S. Supreme Court found that although the extensive and unfavorable press coverage did not technically "cause" the discharge, the defamatory and stigmatizing charges occurred in the course of terminating the chief's employment. *Id.* at 633–34 n. 13, 100 S.Ct. at 1406 n. 13. Further, the city twice refused the chief's request that he be given written specification of the charges against him and an opportunity to clear his name. *Id.* at 629, 100 S.Ct. at 1404. The United States Supreme Court held that *under these circumstances*, the city's actions deprived the chief of liberty without due process of law. *Id.* at 633–34 n. 13, 100 S.Ct. at 1406 n. 13.

The facts in *Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir.1993), *cert. denied*, ‪— U.S. ‪—, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994), are instructive:

On the night of October 3, 1974, a fifteen year-old, unarmed boy broke a window and entered an unoccupied residence in suburban Memphis to steal money and property. Two police officers, Elton Hymon and Leslie Wright, were called to the scene by a neighbor. The officers intercepted the youth as he ran from the back of the house to a six foot cyclone fence in the back yard. After shining a flashlight on the boy as he crouched by the fence, Officer Hymon identified himself as a policeman and yelled "Halt." He could see that the fleeing felon was a youth and was apparently unarmed. As the boy jumped to get over the fence, the officer fired at the upper part of the body, as he was trained to do by his superiors at the Memphis Police Department. He shot because he believed the boy would elude capture in the dark once he was over the fence. The youth died of the gunshot wound. On his person was ten dollars worth of money and jewelry he had taken from the house.

*Id.* at 360. These facts allowed the parents of the deceased to pursue a section 1983 action.

It does not take a detailed analysis of these cases to come to understand why federal courts allowed the suits, including the requests for attorney fees, to move forward. These cases are a far cry from the statute at issue, the Minnesota Cruelty to Animals Act, which was passed in an attempt to protect animals from improper treatment.

908

Here, appellants' request for attorney fees might be successful if we had something akin to the following facts, which we do not: Acting under color of the Minnesota Cruelty to Animals Act, an animal control officer barges into a house without either a warrant or probable cause, snatches a pet right out of the arms of its owner, berates and verbally assaults the owner on a dubious charge of cruelty to animals and then, without more, stomps out through the door, and brings the animal to a pound.

If those facts could be established, I suspect that the individual law enforcement officer and his employing municipality would not get much sympathy from the courts in an effort to escape the imposition of attorney fees if they tried to hide behind the shield of "we were only operating under color of a good law." But we have nothing remotely approaching an egregious fact scenario here (a careful examination of the cases appellants cite to support their claim for attorney fees shows only egregious fact situations).

In contrast, appellants simply looked at what it thought was an unconstitutional state law and, properly so, went to court and made a claim that the law should be struck down. That they are allowed to do. But then, under the guise of cases built on egregious fact situations, to come into court and demand an additional $65,000 in attorney fees chargeable to the municipality, that they are not allowed to do.