**ESTATE of Anne P. BIRD, Deceased,**

**Norman L. BIRD, Administrator, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 75–1971.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 19, 1976.

Decided April 29, 1976.

James E. Beall, Beaumont, Smith & Harris, Detroit, Mich., for plaintiff-appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., Scott P. Crampton, Gilbert E. Andrews, Elmer J. Kelsey, Richard Farber, Tax. Div., Appellate Section, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before PECK and MILLER,* Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

This appeal involves the federal tax consequences to a wife's estate after her death, arising out of a property settlement agreement incident to divorce whereby her husband assigned her his contingent remainder interest in a trust.

---

* Judge Miller concurred in this opinion prior to his death on April 12, 1976.

Anne P. Bird and her husband Truman H. Newberry II were divorced on September 7, 1955. In connection with the divorce proceeding a property settlement agreement was entered into in August, 1955. Under the terms of the agreement, the husband assigned to the wife, to the extent of $75,-000, his contingent remainder interest in a trust. The 33-year-old husband's right to take under the trust was conditioned upon his outliving his 64-year-old uncle, Barnes Newberry, the settlor of the trust. The agreement provided that if the husband predeceased both the uncle and the wife, thereby terminating the contingent interest in the trust, the wife was to receive $40,000 in life insurance proceeds. In the event that the wife should predecease the husband and the husband should predecease the uncle, the wife's estate would take nothing.

The wife died in 1957. In 1964, when the uncle died, the husband was still living. Consequently, the wife's estate, represented by plaintiff-taxpayer in this action, received $75,000 from the trust. This receipt was noted on the estate's income tax return for 1964, but was not treated as taxable income. Upon audit of the return, the Internal Revenue Service determined, based on actuarial computations,[1] that the fair market value of the contingent trust interest at the time of the wife's death was $47,919. Applying Section 1014 of the Internal Revenue Code of 1954,[2] the I.R.S. further determined that the estate's basis in the contingent interest was the value of the interest on the date of the wife's death, $47,919, and consequently that the excess of $75,000 over

$47,919 was taxable to the estate as ordinary income. The estate paid the resulting deficiency in income taxes and filed a claim for refund, asserting that the receipt of $75,000 from the trust in 1964 was a nontaxable event.[3]

In the district court, both parties moved for summary judgment. Finding that the material facts were not in dispute, the district court granted the government's motion and sustained the I.R.S. determination.

On appeal, the taxpayer argues that the district court erred: (1) in holding that the estate realized taxable income on the receipt of $75,000 from the trust in 1964; (2) in accepting the I.R.S. method of valuing the estate's basis in the trust without hearing evidence from the taxpayer on the issue; and (3) in holding that the income to the estate was taxable as ordinary income rather than as capital gain. In support of the first assignment of error, the taxpayer urges that the receipt by the wife of a contingent interest in a trust cannot be considered a "closed transaction" for tax purposes under the doctrine of *Burnet v. Logan*, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931). Rather, it is asserted that the transaction remained "open" until receipt of the $75,000 in 1964 because until then, there was no way for anyone to know what the wife or her estate would receive.

The government, on the other hand, argues that, although under *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), the receipt in 1955 of the contingent trust interest by the wife in exchange for her marital rights is not treated as a taxable event as to the wife, the value of

1. *See* Treasury Regulations, 26 C.F.R. § 20.-2031–10; Internal Revenue Publication No. 11—Actuarial Values for Estate and Gift Tax.

2. 26 U.S.C. § 1014. This section provides in pertinent part:

   (a) In general.—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an

election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.

3. In paragraph k. of its claim for refund, I.R.S. Form 843, the taxpayer set out the following reasons supporting its claim:

   The Commissioner incorrectly attributed gain to the Estate when the Estate received proceeds from a remainder interest which it held in another estate. The receipt of said proceeds was a non-taxable event.

the contingent interest on the date of the assignment became the wife's basis in that interest. It is asserted that, according to the standard of actuarial tables used by the I.R.S. for valuing contingent interests,[4] the fair market value of the contingent interest received by the wife as of the date of the assignment was $46,158.50 and that upon the wife's death the basis to the wife's estate was "stepped up" under 26 U.S.C. § 1014(a) to $47,919, the actuarial value of the contingent interest on the date of the wife's death in 1957. Thus, the government argues, the taxpayer-estate realized ordinary income to the extent that the $75,000 received from the trust upon vesting of the contingent interest in 1964, the date of the settlor's death, exceeded $47,919, the estate's basis in the interest.

In *United States v. Davis, supra,* the Supreme Court considered the federal tax consequences of the transfer pursuant to a property settlement agreement incident to divorce of certain shares of stock by a husband to his former wife in return for the release of her marital claims. After concluding that the transfer in question was a taxable event to the husband whereby the amount realized by the husband was presumed to be equal to the value of the property transferred to the wife, the court stated at page 73, 82 S.Ct. at page 1194, 8 L.Ed.2d at page 343:

> In the context of a taxable transfer by the husband,[7] all indicia point to a "cost"

[7] Under the present administrative practice, the release of marital rights in exchange for property or other consideration is not considered a taxable event as to the wife. For a discussion of the difficulties confronting a wife under a contrary approach, see Taylor and Schwartz, Tax Aspects of Marital Property Agreements, 7 Tax.L.Rev. 19, 30 (1951); Comment, The Lump Sum Divorce Settlement as a Taxable Exchange, 8 U.C.L.A.L.Rev. 593, 601–602 (1961).

basis for this property in the hands of the wife.[8] Yet under the Court of Claims'

[8] Section 1012 of the Internal Revenue Code of 1954 provides that: "The basis of property shall be the cost of such property, except as otherwise provided in this subchapter and subchapters C (relating to corporate distributions and adjustments), K (relating to partners and partnerships), and P (relating to capital gains and losses) . . . ."

position her cost for this property, *i. e.,* the value of the marital rights relinquished therefor, would be indeterminable, and on subsequent disposition of the property she might suffer inordinately over the Commissioner's assessment which she would have the burden of proving erroneous, *Commissioner v. Hansen,* 360 U.S. 446, 468, [79 S.Ct. 1270, 3 L.Ed.2d 1360] (1959). Our present holding that the value of these rights is ascertainable eliminates this problem; for the same calculation that determines the amount received by the husband fixes the amount given up by the wife, and this figure, *i. e.,* the market value of the property transferred by the husband, will be taken by her as her tax basis for the property received.

Under this rationale of *Davis,* the wife's basis in the property received from the husband is the market value of such property at the time of transfer, here $46,158.50.

The husband, Truman H. Newberry II, transferred absolutely to his wife his contingent remainder interest in the trust to the extent of $75,000. The interest was to vest upon death of the husband's uncle provided he survived the uncle. Upon vesting of the interest, the wife or her successors would then become entitled to receive the husband's portion of assets from the trust to the extent that the value of such assets did not exceed $75,000. In the event that the husband did not survive his uncle, and, accordingly, the contingent trust interest failed, the wife would still have been entitled to $40,000 in life insurance proceeds, provided she survived her former husband. Only in the event that the husband predeceased his uncle and the wife predeceased the husband would the wife's successors take nothing.

Although the property rights transferred to the wife under the property settlement agreement were dependent on contingencies, the rights transferred were capable of valuation, at least for the pur-

4. *Supra* note 1.

pose of determining the wife's basis in the property transferred. Generally, contracts and claims to receive indefinite amounts must be valued for federal income tax purposes except in rare and extraordinary instances. Rev.Rul. 58–402, 1958–2 Cum.Bull. 112. The taxpayer has the burden of demonstrating that the case is an extraordinary one in which the contractual rights are not susceptible of valuation. We find on the present record that the taxpayer has not demonstrated that the interest involved was not capable of valuation by use of the actuarial tables. *McCormac v. United States,* 424 F.2d 607, 191 Ct.Cl. 483 (1970).

■■■ The actuarial tables employed by the I.R.S. have long been recognized as an accepted method of valuing future interests where the facts show that the valuation cannot be made with exactitude. In *Hipp v. United States,* 215 F.Supp. 222 (W.D.S.C. 1962), the court, in considering the valuation of trust income for gift tax purposes, stated at page 226:

The valuation of future interest is at best a highly speculative undertaking not unlike the determination of life expectancy which courts and juries are called upon to make in almost all personal injury actions. Recognizing that the value of future interest cannot be determined with any degree of certainty, those called upon to make valuations have resorted to established computations which seldom accurately predict the value in a particular situation but prove to be accurate when used in a great number of instances.

In *McMurtry v. Commissioner,* 203 F.2d 659 (1st Cir. 1953), the Court stated at pages 666–67:

The whole problem of valuing individual life interests by resort to mortality tables is at best a matter of educated guesswork. The courts cannot demand perfection in an area so fraught with speculation and uncertainty. . . . We think, therefore, that tables which have enjoyed such widespread and long-standing use should not be rejected as

wholly unreasonable, even though they may perhaps be susceptible of minor improvements in particular respects. Such discrepancies as may exist will no doubt average out in the long run; and while this may sometimes prove to be unfortunate for individual taxpayers, the discrepancies may have to be suffered in the interest of a simplified over-all administration of the tax laws. [Footnote omitted]

And in *Gelb v. Commissioner,* 298 F.2d 544 (2d Cir. 1962), the Court at pages 551–52 indicated approval of the use of actuarial tables:

Yet the use of actuarial tables for dealing with estate tax problems has been so widespread and of such long standing that we cannot assume Congress would have balked at it here; the United States is in business with enough different taxpayers so that the law of averages has ample opportunity to work. [Footnote omitted]

The fact that the trust interest was contingent rather than vested affected its value but not its taxability once its value was determined. *Helvering v. Reynolds,* 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941); *Augustus v. Commissioner,* 118 F.2d 38 (6th Cir.), *cert. denied,* 313 U.S. 585, 61 S.Ct. 1095, 85 L.Ed. 1540 (1941).

■■ We conclude that the valuation of the trust interest by use of the actuarial methods prescribed by the regulations [5] was proper. In consequence, under the reasoning of *Davis, supra,* the wife's basis in the trust interest was the actuarial value of the interest on the date of its assignment to her by the husband. Upon the death of the wife in 1957, the basis to the wife's estate was stepped up to the actuarial value of the trust interest on the date of the wife's death. 26 U.S.C. § 1014(a).

The open transaction doctrine of *Burnet v. Logan, supra,* is distinguishable and not inconsistent with our conclusion. *Logan* involved the sale of shares of stock in a mining corporation. The purchaser's obli-

---

**5.** *Supra* note 1.

gation in part was to pay a sum of money for each ton of ore mined. No minimum nor maximum amount of ore nor fixed over-all price was specified. The Court accordingly held that the value of the contractual rights received by the seller was not ascertainable at the time of the sale and thus that the transaction remained open for tax purposes. In the present case, the obligations of the husband and the wife were fixed. The wife surrendered all of her marital rights. The husband's assignment of his interest in the trust was *absolute* to the extent of $75,000. *Cf. Matthews v. United States*, 425 F.2d 738, 746, 191 Ct.Cl. 674 (1970). His maximum obligation was fixed at $75,000 and, although subject to contingencies, its value was actuarially ascertainable.

The purpose of the open transaction doctrine is to relieve a taxpayer from having to report income which may never be received. *Burnet v. Logan, supra*, 283 U.S. at 413, 51 S.Ct. at 552, 75 L.Ed. at 1147. In the present case, since the wife's exchange of her marital rights for the trust interest was a nontaxable event as to her, *United States v. Davis, supra*, 370 U.S. at 73, 82 S.Ct. at 1194, 8 L.Ed.2d at 342, there was no possibility that she would have been taxed on unrealized gain.

■■ The taxpayer's second assignment is that the district court committed error in accepting the I.R.S. method of valuing the estate's basis in the trust without hearing evidence from the taxpayer on the issue. It is to be observed from the claim for refund that the taxpayer makes no claim that the government's method of valuing the estate's basis was improper. For that reason alone, the taxpayer is barred from challenging the method of valuation in the present action. Numerous cases sustain the principle that the grounds on which a claim for a tax refund is made must be specifically set forth in the claim for refund itself, otherwise the court in a refund action is without jurisdiction to consider them. *Cherokee Textile Mills v. Commissioner*, 160 F.2d 685 (6th Cir. 1947); 26 C.F.R. § 301.6402–2. *See United States v. E. L. Bruce Co.*, 180 F.2d 846 (6th Cir. 1950). In *Alabama By-Product Corp. v. Patterson*, 258 F.2d 892 (5th Cir. 1958), *cert. denied*, 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959), the Court stated at page 900:

> All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. . . . Anything not raised at that time cannot be raised later in a suit for refund.

Moreover, aside from the jurisdictional issue, the taxpayer did not in any way demonstrate in the district court on the motions for summary judgment in what respects the I.R.S. actuarial tables were inadequate for the purpose of valuing the contingent interest. Nor did it suggest any substitute method of valuation which would have been better or more accurate. In this posture, no genuine issue of material fact was raised on the valuation of the trust interest. The issue was, therefore, properly disposed of by the district court on motion for summary judgment.

■ The final contention of the taxpayer is that even if it should be found that the estate realized a taxable income, such income should be treated as a capital gain and not as ordinary income. As this contention was not set forth in the refund claim, it seems clear from the authorities cited above that the district court was without jurisdiction to consider it. Further, it is at least doubtful that the taxpayer could in any event prevail in its contention that any income which the estate may have received could be treated as a capital gain. Capital gains treatment is provided for by statute only in the case of a "sale" or "exchange" of a capital asset. 26 U.S.C. § 1222. The receipt of the trust assets by the estate in 1964 cannot realistically be regarded either as a "sale" or an "exchange" of a capital asset. *See Miller v. United States*, 262 F.2d 584 (6th Cir. 1958), wherein it was stated: ". . . the gain of the taxpayer result-

ing from the *collection* of a claim or chose in action is taxable as ordinary income."

The order of the district court granting defendant's motion for summary judgment and denying the plaintiff's motion is accordingly hereby

AFFIRMED.