JEROME E. KOZLOWSKI AND MARTHA E. KOZLOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kozlowski v. Commissioner
Docket No. 31144-86
United States Tax Court
T.C. Memo 1993-430; 1993 Tax Ct. Memo LEXIS 442; 66 T.C.M. (CCH) 754; September 15, 1993, Filed *442 An appropriate order will be issued and decision will be entered under Rule 155. For petitioners, Francis Burton Doyle. For respondent, Lamont R. Olson. FAY
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: By notice of deficiency dated April 29, 1986, respondent determined a deficiency in petitioners' Federal income tax and an addition to tax under section 6653(a) for the taxable year 1980 in the respective amounts of $ 58,541 and $ 2,927. Respondent also determined that the deficiency was a substantial underpayment due to a tax motivated transaction *443 and that the increased rate of interest under section 6621(c) was applicable. Petitioners filed a timely petition with this Court. At the time the petition was filed petitioners resided in Saratoga, California. The deficiency in this case results, in part, from the disallowance of a loss in the amount of $ 126,866 claimed with respect to alleged straddle transactions of forward contracts for government-backed financial securities with First Western Government Securities, Inc. (First Western). [2] The First Western losses were the subject of the Court's opinion in Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other grounds 501 U.S.    , 111 S. Ct. 2631 (1991). The trial in that case lasted more than 16 weeks. The record includes a transcript containing more than 10,000 pages and approximately 100,000 exhibits. The Court found, based on that record, inter alia, that: "The transactions between First Western and its customers were illusory and fictitious and not bona fide transactions." Id. at 875. The Court also held *444 that, even if the transactions had substance, they "were entered into primarily, if not solely, for tax-avoidance purposes." Id. at 876. Based on the finding that the transactions were not bona fide, the Court concluded that additional interest under section 6621(c) was due on the underpayments. Id. at 886-887. In concluding that the transactions were not bona fide, the Court examined various aspects of the First Western program, including the risk of profit and loss, the hedging operation, the margins required and fees charged, the pricing of the forward contracts, and the manner in which the transactions were closed. *445 In all of these areas we found that the First Western operations were deficient and not conducted as they should have been if bona fide financial transactions were being conducted. We also pointed out that there were other "gremlins" in First Western's world that dispelled the notion that these transactions were bottomed in financial reality -- reversing transactions months later, confirmations being months late, transactions being made with no documentation, etc. Id. at 882. In the case currently before the Court, petitioners concede that their transactions with First Western were conducted in the same way as the transactions discussed in Freytag, i.e., the same pricing algorithms were used and the transactions were closed in the same way. Based on petitioners' concessions, respondent moved for partial summary judgment with regard to that part of the deficiency arising from the disallowance of the First Western losses and whether the underpayment of tax resulting from those losses is subject to increased interest under section 6621(c). Petitioners apparently do not oppose the motion for partial summary judgment with respect to their liability *446 for the deficiency resulting from the First Western losses, although they do not concede the issue. They do, however, oppose the motion with respect to the increased interest under section 6621(c) and they contest the addition to tax for negligence under section 6653(a). A trial was held concerning the latter issue. We first discuss respondent's motion for partial summary judgment as it pertains to the deficiency resulting from the First Western losses claimed and with respect to the increased interest provisions. 1. Summary Judgment
Summary judgment under Rule 121 is appropriate when "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." Krause v. Commissioner, 92 T.C. 1003, 1016 (1989). We believe that partial summary judgment is appropriate with respect to the First Western loss claimed and the increased interest under section 6621(c) based on our opinion in Freytag v. Commissioner, supra.While petitioners were not parties to the Freytag litigation and res judicata does not apply, the doctrine of stare decisis is applicable. Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965); *447 see also Leishman v. Radio Condenser Co., 167 F.2d 890 (9th Cir. 1948). Petitioners concede that their First Western transactions are identical to the transactions in Freytag v. Commissioner, supra.This Court found that based on that record the First Western transactions were illusory and fictitious in the Freytag case. That holding is controlling here. Petitioners contend that the increased interest under section 6621(c) is inapplicable to them, relying on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. [3] Section 6621(c)(1) provides that, if there is a "substantial underpayment attributable to tax motivated transactions," the interest payable under section 6601 "shall be 120 percent of the underpayment rate". A substantial underpayment attributable to a tax motivated transaction means "any underpayment of taxes * * * attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year * * * exceeds $ 1,000." Sec. 6621(c)(2). The term "tax motivated transactions" means, inter alia, *448 "any sham or fraudulent transaction." Sec. 6621(c)(3)(v). From a literal reading of the statute, if a transaction is determined to be a "sham", the increased interest applies. In Freytag v. Commissioner, supra at 887, we sustained respondent's determinations that section 6621(c) applied to the First Western underpayments based on our finding that the transactions were "shams." Since petitioners concede that their transactions with First Western were identical to those in Freytag, additional interest under section 6621(c) is applicable here. See Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531. *449 Heasley v. Commissioner, supra, is inapposite. In Heasley, this Court found that the transactions entered into were not entered into for profit, and, therefore, under section 301.6621-2T Q-4, Temporary Proced. and Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984), the increased interest under section 6621(c) was applicable. Heasley v. Commissioner, T.C. Memo. 1988-408. The Court of Appeals concluded, however, that the taxpayers had "the requisite profit motive." Heasley v. Commissioner, 902 F.2d at 386. While it is true that in Freytag v. Commissioner, supra at 882-886, we held, in the alternative, that the transactions were not entered into for profit, we sustained the additional interest under section 6621(c) on the ground that the transactions factually were "shams", a finding affirmed by the Fifth Circuit, 904 F.2d at 1015-1016, and it is upon that ground that we sustain respondent's determination here. Thus, the determination of a profit motive, so crucial to the Heasley v. Commissioner, supra, result concerning *450 section 6621(c), is irrelevant to our holding here. [4]
2. Negligence
Respondent determined that an addition to tax under section 6653(a) was due for negligence. Section 6653(a) provides in relevant part that "If any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." "Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. at 887 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964)); see also Zmuda v. Commissioner *451 . 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Petitioners have the burden of establishing that their actions were not negligent. Zmuda v. Commissioner, supra at 1422. The negligence question focuses on petitioner Jerome Kozlowski. He entered into the transactions with First Western, and we will refer to him hereafter as petitioner. Petitioner contends that the addition to tax under section 6653(a) is unwarranted because he exercised due care when he entered into the transactions with First Western. The gravamens of his contention are that he relied on expert advice and that his motive for entering into the transactions was not to avoid taxes. Petitioner has a background in engineering. Over the years he had made investments in real estate and in other ventures. He was told about the First Western program by Mr. Disser, another engineer with whom petitioner worked. It does not appear that Mr. Disser had any expertise in dealing with straddles in forward contracts that were the heart of the First Western program. Petitioner relied on the information concerning the program *452 that was supplied by First Western. This information contained a legal opinion as to the tax aspects of the program. Petitioner also relied on a certified public accountant who prepared his returns. It does not appear that the accountant had any expertise with forward contracts of the nature allegedly traded by First Western. Petitioner testified that most of his net worth was invested in short-term (12 to 18 month) bonds and that he invested in the First Western program to insure that if interest rates fell his income would be protected. Petitioner, however, could not explain how the program would accomplish this result. Furthermore, his interest rate forecast [5] submitted to First Western does not indicate whether interest rates would move up or down. [6]
*453 With regard to petitioner's reliance on experts, such reliance, standing alone, will not insulate a taxpayer from the addition to tax for negligence. It must be shown that the expert had the expertise and knowledge of the pertinent facts to render such an opinion on the subject matter. Freytag v. Commissioner, 89 T.C. at 888. Petitioner has totally failed to establish that anyone he consulted with was qualified by reason of such expertise and knowledge to give an opinion whether the transactions of the First Western program were bona fide. It must be noted that these transactions could hardly *454 be described as being run-of-the-mill, and petitioner admits that he did not understand the transactions. They involved alleged forward contracts to purchase and sell millions of dollars of mortgage backed securities. See Freytag v. Commissioner, 89 T.C. at 862-863. There was no market for these contracts, and First Western was on both sides of the transactions. Furthermore, the ratio of the tax losses compared with the payments was huge, between 8:1 and 10:1. This latter fact was particularly important because, as the Court of Appeals for the Ninth Circuit recognized in Zmuda v. Commissioner, 731 F.2d at 1422, during this period there was "extensive continuing press coverage of questionable tax shelter plans." As we noted in our opinion in Freytag v. Commissioner, 89 T.C. at 888, given this scenario, a taxpayer could not merely rely on the documents supplied by First Western and further investigation was clearly mandated. If there had been any serious examination of the program "No reasonable person would have expected the scheme to work." Id. at 889. *455 Compare Hanson v. Commissioner, 696 F.2d 1232, 1234 (9th Cir. 1983), affg. T.C. Memo. 1981-675. Finally, we note that petitioner's alleged motive for getting into the First Western transactions is simply cut from whole cloth. Petitioner was at a loss to explain how the program worked, much less how it could have been used to protect a future stream of income. Even if the transactions had been bona fide, it would have been virtually impossible to use the First Western program as a device for hedging interest rates. The raison d'etre of the program was to convert ordinary income into long term capital gains and defer income. Furthermore, any true hedging of interest rates would depend on there being the potentiality for delivery of the underlying securities. That was not a part of First Western's world. See Freytag v. Commissioner, 89 T.C. at 857. Moreover, even if this were a possibility, First Western's documents do not support petitioner's argument of a hedge of interest rates. Petitioner has not established that he had a profit motive in entering into these transactions. [7]
*456 Petitioners have not shown that they used due care, and respondent's determination with respect to the addition to tax under section 6653(a) is sustained. An appropriate order will be issued and decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent made other adjustments to interest income, business expenses, boat and aircraft expenses, rental losses, and income from the sale of a capital asset. By stipulation, the parties have resolved these issues. The other adjustments are mathematical and will be resolved during the Rule 155 computations.↩
3. Petitioners also contend that the increased interest provisions are not constitutional. We have rejected that argument. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005↩ (2d Cir. 1986).
4. Furthermore, as we discuss infra, Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408↩, is otherwise distinguishable.
5. An interest rate forecast was an intergral part of First Western's program. The customer would forecast whether interest rates would increase or decrease in the future. Theoretically, this forecast was used in determining the long and short legs of the straddles. See Freytag v. Commissioner, 89 T.C. 849, 852 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.    ↩, 111 S. Ct. 2631 (1991). As a practical matter, the forecast had little to do with the alleged transactions.
6. The record is somewhat unclear as to whether petitioner dealt directly with First Western or through some type of a joint venture with Mr. Disser and a Mr. Fox. Mr. Disser's interest rate forecast was that rates would go up. If that controlled the alleged trading, and if the First Western program could have been used as a hedging device, then the account was hedged in the wrong direction.↩
7. In discussing Heasley v. Commissioner, supra↩, and sec. 6621(c), we noted that the case was distinguishable. The Court of Appeals in that case found that there was a profit motive. There is no credible evidence of a profit motive here.