James B. THOMAS, Plaintiff–
Appellee/Cross–Appellant,

v.

UNITED STATES of America,
Defendant–Appellant/Cross–
Appellee.

Nos. 97–4478, 98–3033.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 29, 1998.

Decided Jan. 27, 1999.

James W. Childs (argued and briefed), Akron, Ohio, for Plaintiff–Appellee/Cross–Appellant.

S. Robert Lyons, U.S. Department of Justice, Tax Division, Washington, DC; Annette G. Butler, Asst. U.S. Attorney, Office of the U.S. Attorney, Cleveland, OH; Regina S. Moriarty (argued and briefed), Bruce R. Ellisen (briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant–Appellant/Cross–Appellee.

Before: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which SILER, J., joined. BOGGS, J. (pp. 834–35), delivered a separate opinion concurring in the result.

SUHRHEINRICH, Circuit Judge.

This case involves the tax consequences of an investment in sham transactions by a taxpayer. We must decide whether the taxpayer is entitled to a refund of deficiencies and penalties paid. We must also determine whether the interest penalty imposed by I.R.C. § 6621(c) (West 1989) (repealed 1989) requires an inquiry into the taxpayer's investment motive. We answer both questions in the negative. Accordingly, we **AFFIRM** the district court's grant of summary judgment upholding the deficiencies and penalties, and **REVERSE** the district court's denial of summary judgment holding that I.R.C. § 6621(c) requires a motive inquiry.

## I. BACKGROUND

Taxpayer James B. Thomas began investing in various tax shelters in 1981. Based upon an initial investment of $12,000 and nonrecourse promissory notes, Thomas claimed a $10,000 loss in 1981, a $11,377.94 loss in 1982, and a $17,358 loss in 1983. Thomas also claimed investment tax credits for his investment in the tax shelters. Thomas used the claimed losses and credits to decrease his tax liability for the tax years 1980 through 1983.

The IRS audited Thomas' returns and disallowed the claimed losses and credits, asserting the tax shelters were shams. Accordingly, the IRS issued Thomas a notice of deficiency on June 18, 1990. The notice itemized the following deficiencies and penalties:

| Year | Deficiency | § 6653(a) [1] | § 6653(a)(1) [2] | § 6653(a)(2) [3] | § 6659 [4] |
|------|-----------|---------------|------------------|------------------|-----------|
| 1980 | $4,235 | $211.75 | N/A | N/A | $1,270.50 |
| 1981 | 1,826 | N/A | $ 91.30 | * | 547.80 |
| 1982 | 9,527 | N/A | 476.35 | ** | 1,479.90 |
| 1983 | 3,796 | N/A | 189.80 | *** | N/A |

\* 50% of the interest due on $1,826.
\*\* 50% of the interest due on $9,527.
\*\*\* 50% of the interest due on $3,796.

Additionally, the IRS determined that Thomas' underpayment was subject to I.R.C. § 6621(c),[5] which provides for an increased rate of interest.

Thomas did not petition for pre-payment review in the Tax Court and the IRS assessed the taxes and penalties on November 13, 1990. Thomas paid the assessed taxes, penalties, and interest on the following dates: November 9, 1995 for the tax year 1980; June 30, 1993 for the tax year 1981; June 6, 1995 for the tax year 1982; and October 30, 1995 for the tax year 1983.

Thomas made several attempts to recover the amounts paid to the IRS. In July of 1993, Thomas filed three Forms 1040X (Amended U.S. Individual Income Tax Return) for the tax years 1981, 1982, and 1983. By this time, Thomas had paid his taxes in full for the 1981 tax year but not for the tax years 1982 and 1983. The IRS sent Thomas three separate letters, all dated September 7, 1993, that stated it was "unable to process" the claims. The IRS informed Thomas it could not process his claim for the 1981 tax year because

he had not provided enough supporting information. The IRS informed Thomas it could not process the claims for the 1982 and 1983 tax years because he had not fully paid his taxes for those years.

Thomas claims he mailed on July 1, 1994, by regular mail, four separate Forms 843 (Claim for Refund and Request for Abatement) for the tax years 1980 through 1983 to both the IRS and to an Akron revenue officer. The Government asserts that the IRS only received the Form 843 for the 1983 tax year. In response to the Form 843 received, the IRS sent Thomas a letter dated September 13, 1994 advising him it was "unable to process" his claim for the 1983 tax year because he had not paid the balance due for that year. Thomas has no documentation verifying that the IRS received, or even that he sent, the Forms 843 for the tax years 1980, 1981, or 1982.

Thomas mailed to the IRS another set of four separate Forms 843 for the tax years 1980 through 1983, all dated November 1,

1. Prior to 1981, I.R.C. § 6653 simply imposed a five percent penalty for a taxpayer's negligent underpayment. *See* Internal Revenue Code of 1954, Pub.L. No. 83–591, § 6653, 68A Stat. 1, 822. In 1981, Congress amended the statute to impose a two-part penalty for negligent underpayment. *See* Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 722(b)(1), 95 Stat. 172, 342–43. Accordingly, the IRS applied the unamended version solely to the 1980 tax year.

2. After the 1981 amendment, I.R.C. § 6653(a)(1) imposed a five percent penalty for negligent underpayment. *See* Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 722(b)(1), 95 Stat. 172, 342–43 (amended 1986).

3. After the 1981 amendment, I.R.C. § 6653(a)(2) imposed an additional penalty equal to fifty percent of the collectible interest on the portion of the underpayment resulting from a taxpayer's negligence. *See id.* (amended 1986).

4. I.R.C. § 6659 (West 1989) (repealed 1989) imposed a penalty for valuation overstatements. During the proceedings below, however, the Government conceded that the IRS incorrectly assessed the I.R.C. § 6659 penalties. Consequently, the district court ordered the amounts paid be refunded.

5. Congress repealed I.R.C. § 6621(c) in 1989, effective for returns filed after December 31, 1989. *See* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7721(b), 103 Stat. 2106, 2399, 2400. I.R.C. § 6621(c) remains applicable to interest accruing on unpaid taxes after December 31, 1984. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 144(c), 98 Stat. 494, 684; Tax Reform Act of 1986, Pub.L. No. 99–514, § 1535(b), 100 Stat.2085, 2750.

1995. Thomas indicated on the Forms 843 that he had mailed a prior claim for each year on July 1, 1994 but that the IRS had not acted on those claims. Thomas attached copies of the Forms 843 that he purportedly mailed on July 1, 1994. The IRS denied Thomas' refund claims in four separate letters dated June 27, 1996. On July 23, 1996, Thomas filed a complaint in district court seeking a refund of taxes, penalties, and interest for the tax years 1980 through 1983.

In the course of the proceedings before the district court, Thomas conceded that the tax shelters were sham transactions. However, Thomas claims that he did not know the tax shelters were shams at the time he entered the transactions. Thomas maintains that he entered the tax shelters with an expectation of profit.

The district court granted partial summary judgment in favor of the Government. First, the district court held that it did not have jurisdiction to consider Thomas' claim for the 1981 tax year because he failed to commence a timely refund suit after the rejection of a valid administrative claim. Second, the district court ruled that the IRS' calculations of tax for the tax years 1980, 1982, and 1983 were correct because Thomas admitted the tax shelters were shams. Third, the district court held that Thomas could not protest the I.R.C. § 6653 negligence penalties because he had not challenged them in his administrative claims with the IRS.[6] Fourth, the district court found the IRS' refusal to abate interest was not subject to judicial review.[7] Finally, the district court held that Thomas' investment motive was relevant in determining the applicability of the I.R.C. § 6621(c) interest penalty and ordered a jury trial to resolve whether Thomas did in fact have a profit motive in entering the tax shelters.

After the grant of partial summary judgment, Thomas and the Government stipu-

lated for the purposes of this appeal that Thomas invested in the tax shelters with an expectation of profit. The Government appeals the district court's refusal to grant summary judgment on the I.R.C. § 6621(c) penalty. Thomas cross-appeals the district court's grant of summary judgment in favor of the Government regarding the IRS' tax assessments.

## II. DISCUSSION

### A. Standards of Review

■■■ A district court's denial of summary judgment is an interlocutory order that is not ordinarily appealable. See Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir.1993). However, when the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial. See id. The denial of summary judgment based on purely legal grounds is reviewed de novo. See id. Similarly, we review the grant of summary judgment de novo. See McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 372 (6th Cir.1997). Summary judgment is appropriate when the parties do not dispute any material questions of fact and one party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c).

### B. Tax Year 1981

Before addressing Thomas' arguments we believe it necessary to discuss the steps a taxpayer must take before he can maintain a suit in federal court. Unless these steps are taken, a federal court does not have jurisdiction to consider the merits of the taxpayer's claim against the IRS. Initially, the taxpayer must file a sufficient administrative claim with the IRS. See I.R.C. § 7422(a) (West

---

6. It is unclear to this Court whether Thomas appeals the district court's decision regarding the negligence penalties. Nevertheless, the district court correctly concluded it lacked jurisdiction to consider a refund of the negligence penalties because Thomas failed to challenge the penalties in any of his administrative claims with the IRS. See Estate of Bird v. United States, 534 F.2d 1214, 1219 (6th Cir.1976) ("Numerous cases sustain the principle that the grounds on which a claim

for a tax refund is made must be specifically set forth in the claim for refund itself, otherwise the court in a refund action is without jurisdiction to consider them.").

7. Thomas does not appeal the district court's determination regarding the IRS' refusal to abate interest.

Supp.1998) (stating that there can be no suit prior to the filing of an administrative claim); *Martin v. United States*, 833 F.2d 655, 658–59 (7th Cir.1987) ("A timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit."). The administrative claim must be filed before the later of two years from the time the tax was paid or three years from the time the tax return was filed. *See* I.R.C. § 6511(a) (West Supp.1998). After filing a sufficient and timely administrative claim, the taxpayer may file an action in federal court if he is dissatisfied with the IRS' determination. However, the action must be filed within two years of the IRS' rejection of the claim. *See* I.R.C. § 6532(a)(1) (West 1989). Now that we have laid out the jurisdictional prerequisites to a refund suit, we turn to Thomas' claims on appeal.

First, Thomas contends that the district court erred in ruling that he did not timely file the Form 843 for the 1981 tax year ("1981 Form 843") dated November 1, 1995. The district court concluded that the "1981 Form 843" dated November 1, 1995 was an untimely administrative filing because the IRS did not receive it before the later of two years from the time the tax was paid or three years from the time the return for the 1981 tax year was filed. Thomas asserts that the IRS failed to follow Revenue Procedure 84–58 in applying his payments, resulting in full payment of his 1981 tax liability much sooner than required. *See* Rev. Proc. 84–58, 1984–2 C.B. 501. According to Thomas, if the IRS followed the revenue procedure, the "1981 Form 843" dated November 1, 1995 would have been timely. However, Thomas waived this argument because he failed to raise the issue below. *See White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990) ("This court will not decide issues or claims not litigated before the district court."). Furthermore, the IRS is bound by its revenue procedures only if the procedure is a substantive rule promulgated pursuant to an explicit statutory grant of authority. *See Estate of Shapiro v. Commissioner*, 111 F.3d 1010, 1017–18 (2d Cir.1997) (ruling that the IRS will be bound by a published rule only when it is substantive in nature and promulgated pursuant to an enabling statute), *cert.*

*denied,* —— U.S. ——, 118 S.Ct. 686, 139 L.Ed.2d 632 (1998); *Estate of Jones v. Commissioner*, 795 F.2d 566, 571 (6th Cir.1986) (noting that the IRS' revenue procedures are "directory and not mandatory"). Because the procedure is not a substantive rule, the IRS is not bound to follow it. Therefore, the "1981 Form 843" dated November 1, 1995 is not a timely administrative filing.

Second, Thomas argues that the district court erred in holding that the "1981 Form 843" allegedly mailed on July 1, 1994 is not a valid administrative claim. In *Miller v. United States*, 784 F.2d 728 (6th Cir.1986), our Court held that the only two exceptions to the "physical delivery rule"—that a filing is not complete until it is delivered and received—are set out in I.R.C. § 7502 (West Supp.1998). The first exception is provided by I.R.C. § 7502(a)(1), which states if a document was delivered by United States mail and was received by the IRS after the prescribed period for the filing, the date of the United States postmark on the envelope is deemed the date of delivery. The second exception is found under I.R.C. § 7502(c)(1), which provides that when a document is sent by registered mail, the registration is prima facie evidence that the document was delivered to the place to which it was addressed and the date of registration is deemed the delivery date. The first exception is inapplicable to the instant case because the "1981 Form 843" allegedly mailed on July 1, 1994 was never received by the IRS. Similarly, the second exception does not apply because Thomas did not send the filing by registered mail.

Nonetheless, Thomas urges us to modify the rule for instances when competent, credible evidence establishes the documents were mailed as alleged. Thomas cites *Detroit Automotive Products Corp. v. Commissioner*, 203 F.2d 785 (6th Cir.1953), and *Central Paper Co. v. Commissioner*, 199 F.2d 902 (6th Cir.1952), which held that a rebuttable presumption exists that material correctly mailed is deemed received. We cannot grant Thomas' request. As noted in *Miller, Detroit Automotive* and *Central Paper* were decided prior to the enactment of

**830**

I.R.C. § 7502. More importantly, we held that the only two exceptions to the "physical delivery rule" are provided in I.R.C. § 7502. Accordingly, we deem the "1981 Form 843" purportedly mailed on July 1, 1994 not to have been received.[8]  *See Salmi v. Secretary of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir.1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

▮ Finally, Thomas asserts that the district court erred in ruling that his refund suit was untimely. The district court determined that the IRS rejected the Form 1040X for the 1981 tax year ("1981 Form 1040X") in its letter dated September 7, 1993. As a result, the district court held that it lacked jurisdiction because Thomas filed an action on July 23, 1996, outside the two-year window for filing an action. The district court erred because the IRS' letter dated September 7, 1993 was not a proper rejection. I.R.C. § 6532(a)(1) requires the IRS to inform the taxpayer of a rejected claim by certified or registered mail. The Government concedes that its September 7, 1993 letter to Thomas was not sent by certified or registered mail. Thus, the September 7, 1993 letter could not start the limitations period. Although the IRS later sent Thomas a rejection letter dated June 27, 1996 by certified mail, Thomas immediately brought suit the following month. Consequently, Thomas filed his action within the prescribed period.

▮ Despite Thomas' timely suit, the "1981 Form 1040X" is a deficient administrative claim. As noted, the taxpayer's administrative claim with the IRS must have been sufficient to constitute a valid administrative claim. The Treasury Regulations elucidate the necessary contents of a sufficient claim:

No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. *The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.* The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. *A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.*

Treas. Reg. § 301.6402–2(b)(1) (emphasis added); *accord United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931) ("Hence, quite apart from the provisions of the Regulation, the statute is not satisfied by the filing of a paper which gives no notice of the amount or nature of the claim for which the suit is brought, and refers to no facts upon which it may be founded."); *see also Angelus Milling Co. v. Commissioner*, 325 U.S. 293, 296, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945) ("The effective administration of these modern complicated revenue measures inescapably leads Congress to authorize detailed administrative regulations by the Commissioner of Internal Revenue. He may insist upon full compliance with his regulations."). Thomas' "1981 Form 1040X" merely stated, without providing any additional information, that he was entitled to a deduction for an alleged investment in "Alaska Mining." Therefore, the "1981 Form 1040X" is not a sufficient administrative claim.

In short, neither the "1981 Form 843" dated November 1, 1995, the "1981 Form 843" allegedly mailed on July 1, 1994, nor the "1981 Form 1040X" are timely and sufficient administrative claims. Consequently, we

---

8. Thomas asserts that the "1981 Form 843" purportedly mailed on July 1, 1994 was received by the IRS because he attached a copy of it with the "1981 Form 843" filed with the IRS in November of 1995. Even accepting Thomas' strained argument, the date of delivery imputed to the "1981 Form 843" allegedly mailed on July 1, 1994 would be the postmark date on the envelope sent in November of 1995. *See* I.R.C. § 7502(a)(1). Thus, the filing would be an untimely administrative claim under I.R.C. § 6511(a) because it would not have been filed before the later of three years from the time Thomas filed his return for the 1981 tax year or two years from the time he paid the tax on June 30, 1993.

lack jurisdiction to consider the merits of Thomas' claims. Accordingly, the district court properly granted summary judgment for the 1981 tax year.

### C. Tax Years 1980, 1982, and 1983

#### 1. Refund of Taxes Paid

Thomas also argues that the district court erred in denying his refund claims for the tax years 1980, 1982, and 1983. The district court held that the IRS properly denied Thomas' requests for a refund because he admitted the tax shelters were shams. Before addressing the merits of Thomas' refund claims, we must first determine whether we have jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998) (rejecting the practice of "assuming" jurisdiction "because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"); *United States v. Webb*, 157 F.3d 451, 453 (6th Cir.1998).

We begin by examining the Forms 843 for the tax years 1980, 1982, and 1983 ("Forms 843") dated November 1, 1995.[9] First, Thomas filed the "Forms 843" dated November 1, 1995 within two years from the time he paid the tax for the tax years 1980, 1982, and 1983. Second, the "Forms 843" dated November 1, 1995 are sufficient administrative claims. Although filed on the wrong form, the "Forms 843" dated November 1, 1995 put the IRS on notice. This fact is evidenced by the corresponding IRS rejection letters dated June 27, 1996, which refer Thomas to the IRS' initial examination of his tax returns. Therefore, the IRS was aware of the nature of Thomas' claims. Finally, Thomas brought suit on July 23, 1996, approximately a month after the IRS rejected his refund claims for the tax years 1980, 1982, and 1983. Accordingly, we have jurisdiction to consider the merits of Thomas' refund claims.

In assessing Thomas' claims for the tax years 1980, 1982, and 1983, we hold that the IRS properly refused Thomas' requests for a refund. In the context of loss deductions and investment tax credits, once a transaction is determined to be a sham the entire transaction is disallowed for federal tax purposes and the taxpayer's motive for entering the transaction is irrelevant. *See Knetsch v. United States*, 364 U.S. 361, 367, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) ("We, therefore, look to the statute and materials relevant to its construction for evidence that Congress meant in § 264(a)(2) to authorize the deduction of payments made under sham transactions entered into before 1954. We look in vain."); *Higgins v. Smith*, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406 (1940) ("The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute."); *Pasternak v. Commissioner*, 990 F.2d 893, 898 (6th Cir.1993) ("If the transaction lacks economic substance, then the deduction must be disallowed without regard to the niceties of the taxpayer's intent."); *Illes v. Commissioner*, 982 F.2d 163, 165 (6th Cir. 1992) ("If, however, the court determines that the transaction is a sham, the entire transaction is disallowed for federal tax pur-

---

9. Thomas also filed other administrative claims with the IRS for the tax years 1980, 1982, and 1983. Thomas' Forms 843 for the tax years 1980 and 1982 that were purportedly mailed on July 1, 1994 were never received by the IRS. Moreover, Thomas failed to send them by registered mail. Therefore, we deem them not to have been received. *See Surowka v. United States*, 909 F.2d 148, 150 (6th Cir.1990); *Miller*, 784 F.2d at 730. The Forms 1040X for the tax years 1982 and 1983, and the Form 843 for the 1983 tax year dated July 1, 1994 are of questionable validity because Thomas neglected to pay his taxes in full for those years when he filed the claims. The Supreme Court has ruled that an assessment must be paid in full before maintaining a suit in federal court. *See Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) ("Reargument has but fortified our view that § 1346(a)(1), correctly construed, requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court."). However, it is not clear whether a taxpayer may bring an action when the assessment is paid after the claim is filed and rejected by the IRS but prior to filing suit. In any event, this determination has no bearing on the instant case because we nonetheless conclude that jurisdiction exists to consider the merits of Thomas' refund claims.

poses, and the [motive] inquiry is never made."); *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir.1989) ("This court will not inquire into whether a transaction's primary objective was for the production of income or to make a profit, until it determines that the transaction is bona fide and not a sham."). Consequently, because Thomas admitted the tax shelters were shams, the IRS properly disallowed his claims for the tax years 1980, 1982, and 1983.

In a last-ditch effort, Thomas contends that the Government engaged in an improper use of offensive collateral estoppel in obtaining summary judgment against him. Specifically, Thomas maintains that the Government used decisions in other litigations involving many of the tax shelters in question here, which the courts in those cases found to be shams. *See Weiler v. Commissioner*, 60 T.C.M. (CCH) 1137, 1990 WL 163183 (1990); *Pacheco v. Commissioner*, 57 T.C.M. (CCH) 739, 1989 WL 64621 (1989); *Rybak v. Commissioner*, 91 T.C. 524, 1988 WL 92157 (1988); *Horn v. Commissioner*, 90 T.C. 908, 1988 WL 44098 (1988). We reject Thomas' argument. Thomas himself admitted the tax shelters were shams. Thus, the Government did not rely on collateral estoppel principles to establish the sham nature of the tax shelters.

In sum, the IRS properly denied Thomas' claims for the tax years 1980, 1982, and 1983 because he admitted the tax shelters were shams. Moreover, the Government did not engage in the use of offensive collateral estoppel in establishing the tax shelters were sham transactions.

## 2. The I.R.C. § 6621(c) Interest Penalty

Initially, we must dispose of Thomas' contention that the determination of whether I.R.C. § 6621(c) requires a motive inquiry does not involve statutory construction and, as such, is not subject to de novo review. Thomas is incorrect. This issue does involve statutory construction and we therefore review it de novo. *See Johnson City Med. Ctr. v. United States*, 999 F.2d 973, 975 (6th Cir.1993).

In its appeal, the Government asserts that the district court improperly denied summary judgment regarding the increased interest penalty under I.R.C. § 6621(c). The district court held that Thomas' investment motive is relevant in determining liability under I.R.C. § 6621(c). The Government argues that Thomas' concession that the tax shelters were shams mandates the imposition of the I.R.C. § 6621(c) penalty regardless of his investment motive.

I.R.C. § 6621(c) imposes interest at a rate of 120% of the normal interest rate. The statute provides for the increased rate of interest for any "substantial underpayment attributable to tax motivated transactions." I.R.C. § 6621(c)(1). A "substantial underpayment" is any underpayment that exceeds $1,000 per tax year. *See* I.R.C. § 6621(c)(2). Additionally, the definition of "tax motivated transaction" includes "any sham or fraudulent transaction." I.R.C. § 6621(c)(3)(A)(v).

On its face I.R.C. § 6621(c) has no motive requirement. Nevertheless, the district court cited *Pasternak v. Commissioner*, 990 F.2d 893 (6th Cir.1993), and *Kennedy v. Commissioner*, 876 F.2d 1251 (6th Cir.1989), in holding that I.R.C. § 6621(c) requires a motive inquiry. The district court ruled that *Pasternak* and *Kennedy* suggest a motive inquiry because both cases addressed the taxpayers' motive in holding the taxpayers liable under I.R.C. § 6621(c). The district court was misguided in its reading of *Pasternak* and *Kennedy*.

In *Pasternak*, the taxpayers invested in co-tenancies that leased master recordings of various music artists for the purported purpose of marketing them. The taxpayers claimed investment tax credits and business expense deductions based on their investment in the co-tenancies. The Commissioner of Internal Revenue disallowed the deductions and credits, alleging that the transactions were shams and entered into solely for the anticipated tax benefits. We agreed that the credits and deductions were properly denied on the grounds that "the transactions in question lacked economic substance and had no effect other than the creation of tax losses." *Pasternak*, 990 F.2d at 898. In determining the taxpayers' liability under I.R.C. § 6621(c), our Court ruled: "Because the

Tax Court correctly determined that petitioners' motives for investing in the leasing transactions were to reduce their tax liability rather than to reap a profit, the section 6621(c) penalty must also be sustained." *Id.* at 904. This Court, in affirming the interest penalty, focused on the taxpayers' lack of profit motive as part of its obligation to establish the sham nature of the transactions. We did not engage in a separate motive inquiry.

In *Kennedy*, the taxpayers claimed mine development expense deductions based on their investment in leases of small plots of gold-bearing land. The Commissioner of Internal Revenue disallowed the deductions, claiming the transactions lacked economic substance. This Court affirmed the disallowance, holding that the Tax Court was not clearly erroneous in characterizing the transactions as fraudulent shams. In also imposing liability on the taxpayers under I.R.C. § 6621(c), we reasoned: "Whatever motives drove [the] investors to participate, there is little doubt that tax motives were predominant. Because investments entered into primarily for tax benefits are not profit motivated, ... petitioners cannot avoid the Tax Court's increased interest assessment authorized by I.R.C. § 6621(c)." *Kennedy,* 876 F.2d at 1256. As in *Pasternak,* our concentration on the taxpayers' profit motive was part of the inquiry in determining whether the transactions were shams.

■■■ Upon a careful reading, this Court in *Pasternak* and *Kennedy* focused on the taxpayers' motive as part of the analysis in deciding whether the transactions were shams. *See Rose,* 868 F.2d at 853 ("The proper standard in determining if a transaction is a sham is whether the transaction has any practicable economic effects other than the creation of income tax losses. A taxpayer's *subjective business purpose* and the transaction's objective economic substance may be relevant to this inquiry.") (emphasis added) (citations omitted); *see also Jackson v. Commissioner,* 966 F.2d 598, 601 (10th Cir.1992) (ruling that the court considers the taxpayer's business motivation and the economic substance of the transaction in making a sham determination); *Bohrer v. Commis-*

*sioner,* 945 F.2d 344, 348 n. 5 (10th Cir.1991) ("Since practical economic benefits are ordinarily construed as profits, a showing that objectively there is no possibility for profit in a transaction can show that the transaction was lacking in economic substance. Thus, the fact that possibilities for profit are discussed by the Tax Court is only reflecting the sham analysis, not an 'entered into for profit' analysis...."). *Pasternak* and *Kennedy* impose no separate motive requirement to sustain an interest rate increase under I.R.C. § 6621(c). This view follows the decisions of other circuits and the Tax Court. *See Chakales v. Commissioner,* 79 F.3d 726, 728 (8th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996); *Anderson v. Commissioner,* 62 F.3d 1266, 1274 (10th Cir.1995); *Estate of Carberry v. Commissioner,* 933 F.2d 1124, 1130 (2d Cir. 1991); *Karr v. Commissioner,* 924 F.2d 1018, 1026 (11th Cir.1991); *Kozlowski v. Commissioner,* 66 T.C.M. (CCH) 754, 755–56, 1993 WL 352753 (1993), *aff'd,* 70 F.3d 1279, 1995 WL 700995 (9th Cir.1995); *Klieger v. Commissioner,* 64 T.C.M. (CCH) 1624, 1638, 1992 WL 385420 (1992).

The district court also relied on *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir.1991), to reinforce its decision. In *Smith,* the taxpayers invested in a partnership engaged in the exploration, development, and marketing of oil, gas, and other fuel alternatives. The taxpayers claimed, *inter alia,* deductions for interest on obligations they had assumed from the partnership. The obligations were represented in the form of recourse notes and resulted from the license of an alternative fuel process and the outsourcing of research and development. The Commissioner of Internal Revenue disallowed the deductions, claiming that the partnership's activity of exploiting the alternative fuel process was not for profit and did not constitute a trade or business. The Commissioner also determined that the taxpayers' investment in the partnership with respect to the alternative fuel project lacked economic substance. Our Court, in reversing the Tax Court, held that the license and outsourcing agreements were entered into with a profit motive and were not shams, and that the venture was a trade or business. Nevertheless, we noted that the

recourse notes were "genuine" obligations and the interest paid on them would be deductible even if the underlying agreements were shams. However, our reasoning in *Smith* was not within the context of I.R.C. § 6621(c). Therefore, we are not bound by its holding.

Although not directly on point, *Illes v. Commissioner*, 982 F.2d 163 (6th Cir.1992), is instructive. In *Illes*, we held that if a transaction is a sham the entire transaction is disallowed for tax purposes regardless of whether the taxpayer was motivated by profit. As made clear in *Illes*, whether a transaction lacks economic substance "consists of an examination of the transaction, not the taxpayer." *Id.* at 166; *accord Rink v. Commissioner*, 47 F.3d 168, 172 (6th Cir.1995) (noting that the court does not inquire "whether the taxpayer was motivated primarily by profit unless it determines that the transaction is not a sham"); *Mahoney v. Commissioner*, 808 F.2d 1219, 1220 (6th Cir.1987) ("If [the transaction] is a sham, then such niceties as whether it was 'primarily' for profit, or whether the test is an objective or subjective one are simply not involved."). *Illes* demonstrates this Court's refusal to look into the taxpayer's motive when a transaction is found to be a sham.

In sum, by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham. Accordingly, and contrary to the district court's holding, Thomas is liable for the increased rate of interest pursuant to I.R.C. § 6621(c) because he admitted the tax shelters were shams.

## III. CONCLUSION

For the reasons stated, we **AFFIRM** the district court's grant of summary judgment upholding the deficiencies and penalties, and **REVERSE** the district court's denial of summary judgment holding that I.R.C. § 6621(c) requires an inquiry into the taxpayer's motive.

BOGGS, Circuit Judge, concurring.

I agree with the result reached by my colleagues in this case, but I arrive at it by a slightly different line of reasoning that bears setting forth. The exact language of the statute authorizing the penalty at issue here, I.R.C. § 6621(c)(1), would initially seem to favor the taxpayer. That penalty is imposed only for "tax motivated transactions." These words would seem to make the taxpayer's motivation an issue, and the taxpayer may well have been motivated by profit, in the conventional sense. However, unfortunately for the taxpayer, the term "tax motivated transaction" is then further defined in the code, and § 6621(c)(3)(A)(v) expressly defines it to include any "sham transaction." Therefore, a direct reading of the statutory language supports the government's argument and requires reversal.

I think the court's opinion stretches a bit in attempting to rescue the *Pasternak* and *Kennedy* cases from some imprecision in their language. Although the court's opinion today is correct that those cases *should have* focused on the taxpayer's motivation only in determining initially whether the transaction was a sham, I don't think that is actually what those courts did. For example, today's opinion correctly quotes *Pasternak*, 990 F.2d at 904, as stating that "because ... petitioners' motives ... were to reduce their tax liability rather than to reap a profit, the § 6621(c) penalty must *also* be sustained" (emphasis added). It is hard for me to read that sentence as meaning anything other than the court there *did* make a separate inquiry as to the interest penalty. Of course, since its initial holding that the transactions were a sham was correct, and it did not disallow the penalty, its reasoning there is only *dicta.* In the case of *Kennedy*, 876 F.2d at 1256, although the court noted the words of the statute, it specifically relied on the finding that the true motive for the transactions was "to reduce ... tax liability" and that it therefore followed that the transactions there were "not profit motivated," without looking further to the definitions.

I am sympathetic to the taxpayer's arguments that it might well be more just that taxpayers who unwittingly enter into sham transactions in hopes of making a profit should not be treated as harshly as taxpayers who do so knowing full well that they are

engaging in a sham. Unfortunately, this is not the law, which is dictated here by the inflexible terms of § 6621(c) and the law defining "sham transactions." But see Karen Nelson Moore, *The Sham Transaction Doctrine: An Outmoded and Unnecessary Approach to Combating Tax Avoidance,* 41 Fla. L.Rev. 659 (1989), criticizing the concept of "sham transaction" and proposing alternate methods to police tax avoidance.

I therefore concur in the court's opinion.