**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0230n.06

**No. 10-1454**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| TYKEE ROSS, | ) | **FILED** |
|  | ) | **Feb 28, 2012** |
| Petitioner-Appellant, | ) | LEONARD GREEN, Clerk |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| KENNETH T. MCKEE, Warden, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Respondent-Appellee. | ) |  |

Before:        BOGGS and STRANCH, Circuit Judges; and CARR, District Judge[*]

BOGGS, Circuit Judge. Tykee Ross appeals a district court's decision to dismiss his petition for writ of habeas corpus as time-barred by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Ross was convicted of first-degree felony murder and sentenced to life imprisonment. After an unsuccessful direct appeal, he filed for state post-conviction relief, which was denied by Michigan's trial and appeals courts. Under Michigan law, Ross had fifty-six days after the Michigan Court of Appeals rejected his claim to file an application for leave to appeal in the Michigan Supreme Court. Ross, through counsel, attempted to comply by sending such an application to the Michigan Supreme Court clerk's designated mailing address via United States Postal Service express mail. The properly addressed application arrived at the proper address at 9:05

---

[*] Hon. James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

a.m. on the last day of the filing period, as shown by a Postal Service receipt. The Michigan

Supreme Court, however, did not docket the application until the next day—one day after the end

of the filing period—and rejected the application as time-barred. Nearly one year later, Ross filed

his federal habeas petition. The district court dismissed the petition as time-barred, even though it

would have been timely, had the Michigan Supreme Court accepted Ross's application for leave to

appeal, thus tolling the AEDPA statute of limitations. *Evans v. Chavis*, 546 U.S. 189, 197 (2006)

(holding that properly filed application for state-court discretionary review tolls AEDPA limitations

period). The district court reasoned that AEDPA's limitations clock started when the Michigan

Court of Appeals denied Ross relief, since the Michigan Supreme Court denied his application for

leave to appeal as improperly filed. It also held that Ross was not entitled to equitable tolling, based

on the state-court clerk's delay in formally filing his application. For the reasons that follow, we

affirm in part, reverse in part, and remand for the district court to consider the merits of Ross's

petition.

I

Ross was convicted of first-degree felony murder in December 2001 and sentenced

to life imprisonment in January 2002. His direct appeal failed in the Michigan appeals and supreme

courts, and came to a conclusion when the time for filing a petition for writ of certiorari with the

Supreme Court passed on December 27, 2004. On January 25, 2005, Ross filed a motion for relief

from judgment in state court. The court denied his motion on July 29, 2005, and denied a motion

for reconsideration on December 1, 2005. On July 28, 2006, Ross filed a delayed application for

leave to appeal in the Michigan Court of Appeals. That court denied Ross's application on March 30, 2007, and denied his motion for reconsideration on May 9, 2007.

Ross, through counsel, then attempted to file an application for leave to appeal in the Michigan Supreme Court. Under M.C.R. 7.302(C)(2), he had to file such an application no later than fifty-six days after denial of his motion for reconsideration, or by July 4, 2007. Since July 4 is a national holiday, however, Ross was required to file his application by the end of the day on July 5, 2007. The Michigan Supreme Court Clerk maintains a post office box at the state secondary complex, where litigants may send filings. Ross's application arrived at this post office box via express mail at 9:05 a.m. on July 5, 2007. Although the tracking information Ross's counsel provided does not contain an address, the State does not dispute that the package was properly addressed and arrived at the post office box at the time the receipt indicates. Nevertheless, the clerk's office failed to file the application until July 6, when it denied the application as time-barred.

Nearly one year later, on June 1, 2008, Ross filed a petition for writ of habeas corpus in the District Court for the Eastern District of Michigan.[1] The State filed a motion to dismiss on statute-of-limitations grounds. *See* 28 U.S.C. § 2244(d)(1) (creating one-year statute of limitations for federal habeas from end of state post-conviction review); *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) ("[D]irect review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts and to this Court has been exhausted.") (internal quotations and

---

[1] As the district court noted, Ross gave his petition to prison officials on June 1, 2008, even though the district court did not file it until June 11, 2008. Under the prisoner mailbox rule, the petition is considered filed when placed in the prison mail system. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

citations excluded). Initially, the district court denied the State's motion. It held that AEDPA's statute of limitations ran for twenty-eight days between the date Ross's conviction became final and the date he filed his state collateral-review pleading, and for another 331 days after the prescribed period for seeking leave to appeal in the Michigan Supreme Court expired on July 5, 2007 until Ross filed his federal habeas petition on June 1, 2008. Thus, the AEDPA limitations period had run for only 359 days, and the petition was timely.

The district court subsequently reconsidered its decision, and correctly held that an improperly filed petition for discretionary review in state court did not toll the AEDPA statute of limitations. *Evans*, 546 U.S. at 197. Ross's petition for leave to appeal was late—and therefore improper—under Michigan law. As such, the court held that the limitations period began to run when the Michigan Court of Appeals denied Ross's motion for reconsideration on May 9, 2007. Ross's June 2008 habeas petition was, therefore, untimely: twenty-eight days elapsed between the day Ross's conviction became final and the day he filed his state collateral-review pleading, and another 388 days elapsed between the day the Michigan Court of Appeals denied his motion for reconsideration, and the day he filed his petition for writ of habeas corpus. Ross appeals from this decision. He argues first that he timely filed his motion for leave to appeal in the Michigan Supreme Court; and second that equitable tolling is appropriate in this case because the motion for leave to appeal arrived timely at the Michigan Supreme Court's mailing address.

II

AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review . . . .

28 U.S.C. § 2244(d)(1)(A). Direct review, within the meaning of § 2244(d)(1)(A), does not conclude "until the availability of direct appeal to the state courts and to [the Supreme] Court has been exhausted." *Jimenez*, 555 U.S. at 119 (internal quotations and citations omitted).

AEDPA, however, tolls this limitations period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A petition for discretionary review in state court counts as "state post-conviction or other collateral review," *ibid.*, and thus tolls AEDPA's statute of limitations, as long as it is timely filed. *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *Evans*, 546 U.S. at 197 ("[O]nly a *timely* appeal tolls AEDPA's 1-year imitations period for the time between the lower court's adverse decision and the filing of a notice of appeal in the higher court."). If such a petition is untimely, however, the date of the last final lower-court decision is the date the limitations period begins to run, since a petition for writ of certiorari following state post-conviction review does not toll AEDPA's statute of limitations. *Lawrence v. Florida*, 549 U.S. 327, 331–36 (2007).

## A

Michigan Court Rule 7.302(C)(2)(b) requires that an "application [for leave to appeal] . . . be filed . . . within . . . 56 days in criminal cases . . . after the filing of the opinion appealed from." M.C.R. 7.302(C)(2)(b). "Late applications [are] not . . . accepted." *Id.* at 7.302(C)(3).

The Michigan Court of Appeals denied Ross's application for leave to appeal on March 30, 2007, and denied his motion for reconsideration on May 9, 2007. As such, Ross was required to file his application for leave to appeal with the Michigan Supreme Court by July 5, 2007. Ross's application reached the Michigan Supreme Court's mailing address at the state secondary complex at 9:05 a.m. on July 5. The clerk, however, did not acknowledge receipt of the application until July 6, fifty-seven days after the Court of Appeals's decision, and one day after the end of the prescribed filing period. The clerk denied the application as untimely, citing Rule 7.302(C)(2)(b). When Ross questioned this decision, the clerk insisted: "late applications will not be accepted." Pet'r's Br. at 17; M.C.R. 7.302(C)(3).

Ross claims that, because his application for leave to appeal arrived timely at the Michigan Supreme Court's mailing address, it was timely filed under Michigan law. This court does not have the power to resolve such a claim. To do so would be to dictate Michigan procedural law to the Michigan Supreme Court. "This court . . . does not function as an additional state appellate court reviewing state-court decisions on state law or procedure." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (internal citations omitted). Rather, as a federal court, we are "obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." *Ibid.* We therefore defer to the Michigan Supreme Court's interpretation of M.C.R. 7.302(C)(3), and hold that Ross's application for leave to appeal was not timely filed.

Because an untimely application for leave to appeal does not toll AEDPA's statute of limitations, *Evans*, 546 U.S. at 197, the limitations clock—which had already run for twenty-eight days between Ross's direct and Michigan-collateral proceedings—began to run again on May 9,

2007, when the Michigan Court of Appeals denied Ross's motion for reconsideration. Three-hundred and eighty-eight days passed between that date and June 1, 2008, when Ross filed his petition for writ of habeas corpus. In total, then, four-hundred and sixteen statute-of-limitations days elapsed from the day Ross's judgment became final to the day he filed his habeas petition. This time-gap exceeds AEDPA's one-year habeas statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(A). Ross's petition is, therefore, time-barred in terms of statutory tolling.

B

Ross next argues that the district court should address the merits of his petition because he is entitled to equitable tolling from May 9, 2007 to July 5, 2007. He reasons that his application for leave to appeal arrived at the mailing address the Michigan Supreme Court designated for filings on the morning of July 5, the last day of the period created by state law for a timely petition for leave to appeal. Had the clerk docketed the application that day, it would have been properly filed, the AEDPA statute of limitations would have been tolled, and Ross's federal habeas-corpus petition would have been timely when he filed it on June 1, 2008.

The Supreme Court recently confirmed that "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). Equitable tolling allows courts to entertain otherwise time-barred proceedings when "a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000). "Although equitable tolling is used sparingly by federal courts," this court does grant such relief in appropriate circumstances. *Johnson v. Hudson*, 421 F. App'x 568, 571 (6th Cir. 2011).

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (internal quotations omitted); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749–50 (6th Cir. 2011) (holding that *Holland* test did not subsume, but replaced, prior equitable-tolling test from *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). In determining whether a petitioner meets these two requirements, we "exercise . . . [our] equity powers . . . on a case-by-case basis," guided and governed by rules and precedents. *Holland*, 130 S. Ct. at 2563 (internal citations omitted). "Where the facts of the case are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, this court reviews the decision *de novo*." *Vroman*, 346 F.3d at 601.

Ross urges that equitable tolling should apply because his application arrived at the Michigan Supreme Court's mailing address on the morning of July 5, 2007, the last day of the appeals period. He suggests that he is entitled to equitable tolling because he diligently pursued his rights by timely filing his documents, and the Michigan Supreme Court's delay in accepting his application was an extraordinary circumstance. We agree.

This court considers documents filed when the United States Postal Service "[makes] delivery at the place directed by the addressee." *Central Paper Co. v. Comm'r of Internal Revenue*, 199 F.2d 902, 904 (6th Cir. 1952), *superseded by statute*, 26 U.S.C. § 7502, *as recognized in Thomas v. United States*, 166 F.3d 825, 829–30 (6th Cir. 1999). In *Central Paper*, a tax case, we held that delivery to a ledge beside a lock-box the tax court designated for filings "constituted delivery to The Tax Court." *Ibid.* We explained that "[t]here is no twilight zone between delivery

by the Post Office to the addressee, and receipt, either actual or constructive, by the addressee,"

*ibid.*, and concluded:

> the processing and handling of the petition by Tax Court employees
> [after the filing arrived] was no concern of the taxpayer. Failure or
> unreasonable delay on the part of Tax Court employees to transfer it
> from the lock box to the Clerk's Office, or to stamp it as filed after
> receipt in the Clerk's Office, is not chargeable to the taxpayer.

*Id.* at 905. Our sister circuits, and district courts nationwide, have adopted similar logic, holding that

delay between a document's arriving at a post office box or drop-box, designated for court

documents, and the clerk's docketing the document is not attributable to the filing party. *See, e.g.*,

*Stevens v. Heard*, 674 F.2d 320, 322 (5th Cir. 1982) ("[W]hen a party has no control over the delay

between the clerk's receipt of a notice of appeal and its filing, the fact that a notice of appeal, *timely*

*received*, was filed out of time [does] not defeat the appeal.") (emphasis added); *Aldabe v. Aldabe*,

616 F.2d 1089, 1091 (9th Cir. 1980) ("Because an appellant has no control over delays between

receipt and filing, a notice of appeal is timely if received by the district court within the applicable

period specified in Rule 4."); *Turner v. City of Newport*, 887 F. Supp. 149, 150–51 (E.D. Ky. 1995)

(citing *Central Paper*, 199 F.2d at 904) (holding that placing a complaint in clerk's office's

postoffice box at 11:30 p.m. of the day the statute of limitations expired counted as timely filing);

*Hetman v. Fruit Growers Express Co.*, 200 F. Supp. 234, 237 (D.N.J. 1961) ("I find that the original

complaint in this action was in the Post Office box assigned to the Clerk of this Court in the United

States Post Office in the City of Newark on Saturday, April 22, 1961, and that therefore the action

was commenced within the time required."); *Johnson v. Esso Standard Oil Co.*, 181 F. Supp. 431,

433–34 (D. Pa. 1960) ("I think that the delivery of this complaint to the Clerk in his post office box

on Monday, November 24, 1958, constituted a filing of the complaint and commencement of the plaintiffs' action on that day, which was prior to the expiration of the two-year period prescribed by the statute of limitations."); *Johansson v. Towson*, 177 F. Supp. 729, 731 (M.D. Ga. 1959) (holding that "the receipt by the Deputy Clerk of . . . complaints in his Post Office Box in the early morning hours of Saturday, August 23, constituted a sufficient filing of these suits prior to midnight of the following day, notwithstanding the fact that the clerk did not open the box until 8:30 a.m. on Monday, August 25.").

Under this rule, we would consider Ross's application for leave to appeal timely. The package arrived at 9:05 a.m. on July 5, 2007—the morning of the last day of the appeals period—at the address the Michigan Supreme Court designated for such papers. From that point on, Ross had no control over when the package arrived in the clerk's office, or when the clerk opened it and stamped its contents as "filed." To charge Ross with the clerk's delay in filing his application would be to hold him accountable for circumstances beyond his control. Federal courts sitting in equity do not condone such a result. *See Deloney v. Estelle*, 661 F.2d 1061, 1062 (5th Cir. 1981) ("A rigid application of [Federal Rule of Appellate Procedure 4(a)] would mandate that any appeal would be dismissed. However, a rigid application under the facts of this case would be unjust.").

But the issue here is not whether we would have resolved Ross's case differently, were we the Michigan Supreme Court. Rather, we must decide whether Ross is entitled to equitable tolling in federal court, based on the Michigan Supreme Court clerk's refusal to treat his application for leave to appeal as timely.

This court has not addressed the precise question presented—whether a prisoner, represented by counsel in state post-conviction proceedings, may qualify for equitable tolling based on a state clerk's filing delay. We have, however, dealt with an analogous situation. In *White v. Curtis*, 42 F. App'x 698 (6th Cir. 2002), a Michigan prisoner delivered his application for leave to appeal in the Michigan Supreme Court to prison officials on February 6, 1996, two days before his fifty-six-day appeals period ended on February 8. *Id.* at 700. The clerk did not receive the application until February 9. *Ibid.* Because Michigan does not recognize the prisoner mailbox rule, the Michigan Supreme Court dismissed the application as time-barred. *White*, 42 F. App'x at 700. Had the Michigan court accepted the application in compliance with the federal prisoner mailbox rule, the prisoner's federal petition for writ of habeas corpus would have been timely. *Id.* at 699. We held that equitable tolling should apply because of "the apparent justice in granting a state appellant the equitable benefit of the federally-accepted 'mailbox rule' for purposes of tolling a federal statute of limitations." *Id.* at 701; *see also Burger v. Scott*, 317 F.3d 1133 (10th Cir. 2003) (holding that AEDPA statute of limitations was tolled during four-month delay between date petitioner delivered state habeas petition to prison officials and date petition was stamped as filed in state court, even though Oklahoma did not apply prisoner mailbox rule).

Similarly, we believe it is appropriate to apply equitable tolling and give Ross the benefit of our "federally-accepted . . . [rule] for purposes of tolling a federal statute of limitations." *White*, 42 F. App'x at 700. We therefore hold that, because Ross's application arrived timely at the address the Michigan Supreme Court designated for court documents, the federal courts should treat it as timely filed for the purposes of § 2244(d)'s limitations period. The statute of limitations should

be tolled from May 9, 2007 to July 5, 2007, and the district court should proceed to the merits of Ross's petition for writ of habeas corpus.

In so holding, we by no means dictate Michigan law to the Michigan courts. Rather, we apply our equitable powers to prevent inequity. We recognize, of course, that "[i]n the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation," *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), and that Ross waited for nearly a full year after the Michigan Supreme Court denied his petition for leave to appeal, before filing his federal habeas petition.[2] But neither of these points changes the outcome. The clerk's delay, not attorney error, is the reason Ross's petition was late, and but for the clerk's late acceptance of Ross's filing, Ross's federal habeas petition would have been timely, even though he did not file it until June 2008.

Nor does the Supreme Court's decision in *Artuz v. Bennett*, 531 U.S. 4 (2000), compel a contrary conclusion. In *Artuz*, the Court explained: "An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Id.* at 8. The court below relied on this language, emphasizing that the clerk did not accept Ross's application until July 6, 2007, one day after the end of the limitations period.

*Artuz*, however, did not address acceptance directly. Rather, it involved "the question whether an application for state postconviction relief containing claims that are procedurally barred

---

[2] Although Ross attempted to explain this delay below, he presented no such explanation in this court.

is 'properly filed' within the meaning of [§2244(d)(1)(A)]." *Artuz*, 531 U.S. at 5. The case did use the word "accepted," and noted that "time limits upon . . . delivery, [and] the court and office in which [an application] must be lodged" were relevant considerations in determining whether filing was proper. *Artuz*, 531 U.S. at 8. It was silent on the issue this case presents: the meaning of the word "acceptance."

But even to the extent that *Artuz* is relevant here, it does not compel a different result. Ross's application for leave to appeal arrived at the Michigan Supreme Court's designated mailing address. There, a state employee accepted the package, by signing the certified mail receipt. Because the Michigan Supreme Court held out a location other than its clerk's office as a valid place for filings, delivery to, and acceptance at, that location constituted filing within the meaning of *Artuz*.

IV

The Michigan Supreme Court's delay in filing Ross's application for leave to appeal, after Ross timely delivered his pleading to the court's designated mailing address, should not prevent him from presenting his petition for writ of habeas corpus to the federal district court. Accordingly, we hold that equitable tolling of the AEDPA limitations period from May 9, 2007 to July 5, 2007 is appropriate. We AFFIRM the opinion of the district court, insofar as it determines that Ross's petition was untimely on statutory grounds. We REVERSE its decision to deny equitable tolling, however, and REMAND for proceedings consistent with this opinion.